DEWINE, APPELLANT, *v.* OHIO ELECTIONS COMMISSION,
APPELLEE.

[Cite as Dewine v. Ohio Elections Comm. (1978),
61 Ohio App. 2d  25.]

(No. 78AP-162—Decided September 26, 1978.)

*Messrs. Moritz, McClure, Hughes, Kerscher & Price,* and
*Mr. John F. Berry,* for appellant.
*Mr. William J. Brown,* attorney general, and *Mr.
Patrick V. Kerrigan* for appellee.

WHITESIDE, J.   Plaintiff appeals from a judgment of the
Franklin County Court of Common Pleas. Although no
assignments of error as such have been asserted, plaintiff has
raised what he denominates "Issues Presented for Review,"
which we consider to be his assignments of error, as follows:

"I.  Did the trial court err in failing to declare that ORC
§3599.091 violates the First Amendment of the United States
Constitution?

"II.  Did the trial court err in failing to declare that ORC
§3599.091 is an unconstitutional delegation of legislative
power in violation of Article II, Section I of the Ohio Con-
stitution?

"III.  Did the trial court err in failing to declare that ORC

§3599.091 is an unconstitutional delegation of judicial power in violation of Article IV, Section I of the Ohio Constitution?"

Defendant Ohio Elections Commission has also filed a notice of appeal from that part of the judgment requiring it to utilize a standard of proof greater than provided by law and, although also not expressly denominated as such, has raised the following assignment of error:

"The Ohio Elections Commission is not required to utilize a 'beyond a reasonable doubt' standard of proof before it refers a case to a local prosecutor pursuant to R. C. §3599.091."

The record as originally transmitted to this court sets forth no evidence upon which this case was decided by the trial court, which apparently was stipulated. However, subsequent to oral argument, the parties, pursuant to App. R. 9(E), have agreed that a stipulation of facts together with two exhibits were inadvertently omitted from the record on appeal and should be transmitted as a supplemental record so as to constitute part of the record on appeal.

From this stipulation, it appears that plaintiff was the successful candidate for Greene County Prosecutor in 1976, defeating Nicholas Carrera, apparently an incumbent. On October 21, 1976, a third person filed a complaint with defendant Ohio Elections Commission, contending that plaintiff and his campaign committee had violated R. C. 3599.091. Affidavits by Carrera and another person were submitted with that complaint. Several hearings were held by the defendant, which on January 7, 1977, "by a vote of 3-1, found that the prosecutorial statistics used in DeWine's campaign brochure were a misleading representation of incumbent Carrera's actual prosecution record in violation of R. C. 3599.091 (B) (9) and that the matter be referred to the appropriate prosecuting authority." The commission's findings as set forth in Exhibit B attached to the stipulation (apparently the minutes of the meeting of the Ohio Elections Commission on January 7, 1977), are not quite as specific as the above-quoted stipulation, the minutes showing the following:

"***Mr. Mirman moved and Mrs. Nedelman seconded that the following resolution be adopted. Mr. Carson voted nay. Motion carried.

"Resolved, that the Ohio Elections Commission finds that it appears, based on the evidence presented in Case No. 100-01, that Division (B) of Ohio Revised Code 3599.091 has been violated in that campaign brochures issued by the DeWine for Prosecutor Committee in connection with the campaign of R. Michael DeWine for Greene County Prosecuting Attorney contained written or printed false statements relative to the prosecution record of candidate Nicholas A. Carrera, and orders that the Commission's findings and the evidence in this case be transmitted to the Prosecuting Attorney of Greene County, Ohio."

The minutes further indicate that the defendant commission found no violation with respect to two other complaints made against either plaintiff or his committee.

Although the first assignment of error broadly contends that R. C. 3599.091 violates the First Amendment of the United States Constitution, it is apparent from a reading of the statute and from the stipulation of the parties that only R. C. 3599.091 (B) (9) is involved in this litigation. That section reads, as follows:

"(B) No person, during the course of any campaign for nomination or election to public office or office of a political party, by means of campaign materials, including sample ballots, an advertisement on radio or television or in a newspaper or periodical, a public speech, press release, or otherwise, shall purposely do any of the following:***

"(9) Post, publish, circulate, or distribute a written or printed false statement knowing the same to be false concerning a candidate that is designed to promote the election, nomination, or defeat of the candidate."

The First Amendment to the United States Constitution provides succinctly that "Congress shall make no law***abridging the freedom of speech***."

On its face, the First Amendment does not apply to the states; however, it is well settled that the freedom of speech guaranteed by the First Amendment is one of the liberties protected by the Fourteenth Amendment against state infringement. Although it is sometimes stated that the First Amendment is incorporated into the Fourteenth Amendment, nevertheless, with respect to the states, it is the Fourteenth Amendment that applies directly to the states. The

result, however, has not varied, regardless of the frame of reference.

As noted, it is "freedom of speech" that is protected by the First Amendment. Unfortunately, what constitutes "freedom of speech" is not defined by the Constitution, and has given rise to multitudinous litigation through the years. That freedom of speech is not absolute has long been recognized as evinced by the classic statement that "no one has the right to cry 'fire' in a crowded theater."

Section 11, Article I, of the Ohio Constitution, is more definitive and provides that:

"Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press.***"

Both the United States and Ohio Constitutions afford broad protection to political speech since their core purpose is to protect free discussion of governmental affairs. The interchange of ideas with open debate assures informed choices and a peaceful method to bring about desired social, economic, or governmental changes.

Freedom of speech is a basic, fundamental right, and any statute which tends to affect such right must be subjected to close judicial scrutiny. Ordinarily, there can be no prior restraints placed upon speech, although, as indicated by the Ohio Constitution, the state may provide sanctions for the abuse of the freedom of speech. Slander, libel, perjury, and invasion of privacy are well recognized examples of abuses of the freedom of speech and are sometimes referred to as "unprotected speech." Even such unprotected speech cannot be restrained before it is uttered, sanctions being permissible only after the fact. The statute herein involved in no way imposes prior restraint, any sanction being imposed only after the fact.

The issue, therefore, is whether there is a compelling state interest necessitating the prohibition against the kind of utterances proscribed by the statute in question or, in other words, whether such utterances constitute "unprotected speech." To determine this, we must examine that which the statute prohibits.

There can be no violation of R. C. 3599.091 (B), unless a person, during a political campaign, purposely and with knowledge of its falsity, publishes a written or printed false statement about a candidate designed to promote the election or defeat of such candidate. To constitute such a violation, there must be: (1) the publication of a written or printed false statement; (2) the person charged must have been aware of the falsity of the statement at the time of its publication; (3) the person charged must have purposely published such false statement despite knowledge of its falsity; and (4) such false statement must have concerned a candidate; and (5) such false statement must be designed to promote the election or defeat of such candidate.

There is indeed a compelling state interest in preventing the publication of false statements concerning candidates for election to office where such statements are purposely published with full knowledge of the falsity thereof and are designed to promote the election or defeat of a candidate for office. It is a very compelling state interest to promote honesty in the election of public officers. Freedom of speech does not include a right to purposely, with knowledge of its falsity, publish a false statement about a candidate for public office with the intent to promote the election or defeat of such candidate. R. C. 3599.091 (B) (9) meets the test of *New York Times Co.* v. *Sullivan* (1964), 376 U.S. 254, a case involving libel.

It is stated at page 279:

"The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.***"

In short, R. C. 3599.091 (B) (9) is facially constitutional and affronts neither the First Amendment to the United States Constitution, nor provisions of the Ohio Constitution. The first assignment of error is not well taken.

By the second assignment of error, plaintiff contends that R. C. 3599.091 is an unconstitutional delegation of legislative power. Plaintiff first contends that R. C. 3599.091 confers upon the defendant commission the power to deter-

mine what constitutes a false statement. There is no merit to this contention. What constitutes a false statement is defined by the statute. First, it must be a statement concerning a candidate for public office. Secondly, such statement must be intended to promote the election or defeat of the candidate about whom it is made, which means that the statement is such that it will probably have a meaningful effect upon the outcome of the election. Thirdly, the statement must be false. Fourth, the person publishing the statement must have knowledge of the falsity of the statement.

Nor does the statute permit the defendant commission to define criminal conduct after the act occurs. What constitutes the prohibited conduct is, as indicated above, defined by the statute.

Plaintiff contends that the commission based "its findings on its belief that it is a false statement to state a criminal case can be lost before the Grand Jury." Although such may be correct, it does not affirmatively appear in the record of this case. There is, as indicated by plaintiff, grave doubt as to whether such a finding would constitute a violation of the statute. However, this would raise, at most, first, a question of the interpretation of the application of the statute to particular facts and, secondly, a question of constitutionality in the application of the statute, not the facial constitutionality thereof, which we determined herein.

As we shall note later in the decision, there are perhaps some deficiencies in the findings of the defendant commission, and perhaps a misunderstanding of its function.

Pursuant to R. C. 3599.091 (C), the function of the defendant Ohio Elections Commission is: (1) to receive sworn complaints alleging violations of R. C. 3599.11; (2) to conduct an investigation of the charges; (3) to make a finding as to whether or not a violation has occurred; and (4) if a violation be found, to transmit a copy of its findings and the evidence to the prosecuting attorney of the appropriate county. R. C. 3599.091 (C) merely confers on the Ohio Elections Commission the power to make a factual determination as to whether the statute has been violated. There is no unconstitutional delegation of legislative authority.

Plaintiff also contends that the standard of proof that the commission must utilize in making its findings is not suffi-

ciently established by statute. As noted in a subsequent portion of this decision, there is no merit to this contention. The second assignment of error is not well taken.

By the third assignment of error, plaintiff contends that R. C. 3599.091 is an unconstitutional delegation of judicial power. That this is not the intent of the statute is evinced by the last sentence of R. C. 3599.091 (C), which provides that: "the common pleas court has exclusive original jurisdiction of prosecutions under this section."

However, the first sentence of that section provides that: "Before any prosecution may commence, a complaint shall be presented to the Ohio Elections Commission by an affidavit of any person, made on personal knowledge and subject to the penalties for perjury, setting forth any violation of division (A) or (B) of this section."

Although R. C. 3599.091 (D) provides that a violation of the section is a misdemeanor of the first degree, the function of the Ohio Elections Commission appears to be somewhat similar to that of a grand jury in felony cases. A prosecution cannot be commenced by merely filing a complaint with the court; rather, there must first be a preliminary determination by the Ohio Elections Commission as to whether a violation has occurred.

Such a finding, however, does not constitute a conviction nor authorize the imposition of sanctions against the alleged offender any more than does an indictment by the grand jury. The action by the Ohio Elections Commission is a preliminary to the commencement of a prosecution. Any finding of a violation by the commission must be forwarded to the county prosecutor, who in turn must initiate any criminal prosecution that may ensue. A full opportunity to defend in such prosecution is afforded the alleged violator.

The purpose of this provision is to prevent the promiscuous filing of criminal charges in court during the heat of a political campaign, requiring instead that a preliminary determination be made by the Ohio Elections Commission prior to the commencement of any prosecution. Additional protection is afforded the alleged violator since the commission may not proceed merely upon probable cause, as is more fully discussed in connection with the cross-assignment of error. Although the requirement of preliminary findings by the

Ohio Elections Commission prior to the commencement of a prosecution may constitute a somewhat unusual procedure, the powers conferred upon the Ohio Elections Commission are not judicial powers but are more akin to the powers conferred upon a prosecutor in determining whether to proceed with the prosecution of an alleged violation of law. We conclude that R. C. 3599.091 (C) does not constitute an unconstitutional delegation of judicial power. Accordingly, the third assignment of error is not well taken.

By its cross-assignment of error, the defendant Ohio Elections Commission contends that the trial court erred in determining that the commission is required to utilize a standard of proof beyond a reasonable doubt in determining whether or not a violation has occurred. There is no such requirement in the statute. Rather, R. C. 3599.091 (C) provides that the Ohio Elections Commission shall make an investigation of the complaint and shall make findings. The specific provision is, as follows:

"If the commission finds that division (A) or (B) of this section has been violated, it shall forthwith transmit a copy of its findings and the evidence to the prosecuting attorney of the appropriate county.***"

The defendant contends that the statement by the trial court as to the burden of proof is dicta, and thus should not be considered part of the judgment. However, this was an action for declaratory judgment, and the trial court expressly, as part of its declaration, found that the Ohio Elections Commission is required to make findings beyond a reasonable doubt. This constitutes part of the declaratory judgment and is not merely dicta.

As noted above, the Ohio Elections Commission forwards its findings to the prosecutor only if it "finds" that R. C. 3599.091 has been violated. As noted above, the function of the commission is very similar to that of a grand jury, which is required to make similar findings in order to return an indictment. See R. C. 2941.06. However, it is difficult to conceive how one can make an affirmative finding of fact predicated upon less than the greater weight of the evidence. This, rather than proof beyond a reasonable doubt, is necessarily the standard to be used by the Ohio Elections

Commission in determining whether or not a violation has occurred.

The actual findings of the Ohio Elections Commission, as quoted above, are not consistent with the statutory requirement in that the commission, rather than finding a violation had occurred, found only "that it appears" that a violation has occurred. Although plaintiff has contended that the commission only found that the campaign brochures were misleading, the actual finding of the commission was that the campaign brochures "contained written or printed false statements relative to the prosecution record of candidate Nicholas A Carrera."

Since the Ohio Elections Commission findings were specific, rather than general, we note that there was no finding that any person purposely published, by the means set forth in the statute, the campaign brochures found to contain written or printed false statements with knowledge of such falsity, all of which are prerequisites to the finding of a violation of the statute as indicated above. Furthermore, although not clear from the record, it is more probable from the language of its findings that the Ohio Elections Commission used a probable-cause standard, rather than making an affirmative finding of fact predicated upon the greater weight of the evidence. Although these issues are not before us for determination, and we do not determine them hereby, we do note that the Ohio Elections Commission made no finding, by whatever standard it utilized, that plaintiff had violated the statute, the only reference being to the DeWine for prosecutor committee.

We conclude that the trial court erred in imposing a proof-beyond-a-reasonable-doubt standard upon the Ohio Elections Commission, inasmuch as R. C. 3599.091 (C) does not make such requirement. As indicated above, the proceedings before the Ohio Elections Commission do not constitute a criminal prosecution requiring proof beyond a reasonable doubt, but such proceedings are merely a preliminary inquiry prior to the commencement of prosecution, somewhat analogous to the function of a grand jury.

Section 10, Article I, Ohio Constitution, provides that indictment to a grand jury is not a prerequisite to a prosecution of an offense for which the penalty provided is less than im-

prisonment in the penitentiary, making such an indictment unnecessary for a prosecution of a violation of R. C. 3599.091, which is a misdemeanor of the first degree. However, we find no constitutional infirmity in the statutes providing for a similar inquiry by the Ohio Elections Commission preliminary to prosecutions for a violation of R. C. 3599.091.

Since we find that the trial court erred with respect to the standard of proof, the cross-assignment of error is well taken.

For the foregoing reasons, plaintiff's three assignments of error are overruled, but defendant's assignment of error is sustained, and the judgment of the Franklin County Court of Common Pleas is so modified as to delete therefrom the finding that the Ohio Elections Commission is required to utilize a proof-beyond-a-reasonable-doubt standard, and as so modified is affirmed. This cause is remanded to that court for the implementation and execution of the judgment as modified.

*Judgment affirmed*
*as modified.*

STRAUSBAUGH and REILLY, JJ., concur.