THE STATE OF OHIO, APPELLEE, *v.* DAVIS, APPELLANT.

66

(No. 1164—Decided May 20, 1985.)

*Fred Zuch,* for appellee.

*Lawrence J. Dolan* and *David M. Ondrey,* for appellant.

FORD, J. After the election for County Commissioner of Geauga County, Ohio, in November 1982, the unsuccessful candidate, Barbara Varanese, filed a complaint against her opponent, Tony Gall, and the Committee to Elect Tony Gall, for alleged violations of the campaign practices law, R.C. 3599.091. Appellant, Edna Davis, was a member of Tony Gall's election committee. The complaint was based upon certain statements about Varanese appearing in advertisements printed and circulated by Gall's committee during the campaign.

Pursuant to R.C. 3599.091(C), a hearing was held in Columbus before the Ohio Elections Commission in order to determine if probable cause existed that the law had been violated. After the hearing, the commission found that probable cause did exist and transmitted a copy of its findings and evidence to the Prosecuting Attorney of Geauga County. The commission cited not only Tony Gall, but three members of his committee, including appellant. Subsequently, the Geauga County Grand Jury indicted appellant on thirteen counts of unfair political campaign activities.

Appellant was tried on these counts in a joint trial with the three other defendants, Tony Gall, commissioner candidate; the campaign manager, Carl Manfredi; and the Republican Party Chairman for Geauga County, Dean Schanzel. Appellant was convicted of all thirteen counts but for purposes of sentencing the trial court merged all the counts.

Appellant was sentenced to sixty days in the Geauga County Jail and ordered to pay a fine of $1,000 in costs. The jail sentence was suspended along with $700 of the fine. She was placed on probation for two years with condition that she not engage in any political activity during the term of her probation.

During the campaign, appellant was asked to provide Gall's election committee with background information about Barbara Varanese. As a county commissioner, appellant had the occasion to deal with Varanese, who was then county treasurer, on a number of different issues and matters. Appellant prepared a written summary of their experiences. The material was edited by defendants Manfredi and Schanzel. The edited version, approved by defendant Gall, was published as a campaign advertisement in local newspapers and circulars.

Appellant timely appeals and presents five assignments of error.

"1. The trial court erred in finding the appellant, Edna Davis, guilty of violating R.C. 3599.091(B)(10).

"2. The trial court erred in failing to find R.C. 3599.091(B)(10) unconstitutional.

"3. The trial court erred in refusing to allow counsel for the defendant,

Edna Davis, to examine the Grand Jury testimony of Barbara Varanese in camera in order to determine if there were inconsistencies in her prior sworn statements.

"4. The trial court erred in prohibiting the defendants from cross-examining the prosecution witness as to that witness' pending civil action against the defendants.

"5. The trial court erred in establishing as a condition of defendant's probation that she not engage in any political activity during the term of her probation."

Appellant's first assignment of error contends that the finding of guilt by the trial court is against the manifest weight of the evidence and is contrary to law.

The standard of actual malice as expressed in *New York Times Co.* v. *Sullivan* (1964), 376 U.S. 254, is applicable to criminal sanctions imposed for criticism of public officials by state law. *Garrison* v. *Louisiana* (1964), 379 U.S. 64. Thus, there must be proof that the alleged defamatory publication was made with actual malice, *i.e.,* "* * * with knowledge that it was false or with reckless disregard of whether it was false or not. * * *" *New York Times Co.,* *supra,* at 280.

There is competent, credible evidence to support the finding that several of the statements at issue were false, and the conclusion of the trial court as to the counts in the indictment. For example, Varanese never personally instituted any litigation. She had not given her staff three raises during the year in question. In fact, only three people in her office were given singular salary increases, which data was available in the county auditor's office. The figures of the total monies allegedly lying idle were not substantiated or documented. The health tax levy was an issue even before Varanese took office as county treasurer. The record discloses that attorney Norton, who was Prosecuting Attorney of Geauga County from 1977 to 1980, had issued an opinion in July 1977 at the request of Robert Slatzer, a health district board member, and later submitted an interpretation of that opinion to the Geauga County Board of Commissioners at its invitation. There is also evidence to support the finding that appellant knew that her statements concerning the foregoing topics were false. She was commissioner throughout this time period and was personally aware of the true situation. Thus, as a reviewing court we will not substitute our judgment for that of the trial court where there is such competent, credible evidence. *State* v. *Williams* (1976), 47 Ohio App. 2d 330 [1 O.O.3d 393], paragraph one of the syllabus. The first assignment of error is without merit.

Appellant's second assignment of error challenges the constitutionality of R.C. 3599.091(B)(10). The assigned error is without merit.

R.C. 3599.091(B)(10) read (see 138 Ohio Laws, Part I, 819, 823-824):

"(B) No person, during the course of any campaign for nomination or election to public office or office of a political party, by means of campaign materials, including sample ballots, an advertisement on radio or television or in a newspaper or periodical, a public speech, press release, or otherwise, shall purposely do any of the following:

"* * *

"(10) post, publish, circulate, or distribute a written or printed false statement, either knowing the same to be false or with reckless disregard of whether it was false or not, concerning a candidate that is designed to promote the election, nomination, or defeat of the candidate."

Freedom of speech is a basic fundamental right under both the United States and the Ohio Constitutions. First Amendment, United States Constitution; Section 11, Article I, Ohio Con-

stitution. However, there are well-recognized abuses of speech which are unprotected. *DeWine* v. *Ohio Elections Comm.* (1978), 61 Ohio App. 2d 25, at 28 [15 O.O.3d 28]. Even these unprotected areas cannot claim immunity from constitutional limitations. Instead, prohibitions against such speech must be measured by standards that satisfy the First Amendment. *New York Times Co.* v. *Sullivan, supra,* at 269. Thus, statutes affecting or abridging speech must bear close judicial scrutiny to determine if there is a compelling state interest necessitating the prohibition. *DeWine, supra.*

One appellate district in Ohio has found R.C. 3599.091 to be constitutional. We agree with that court's analysis:

"There is indeed a compelling state interest in preventing the publication of false statements concerning candidates for election to office where such statements are purposely published with full knowledge of the falsity thereof and are designed to promote the election or defeat of a candidate for office. It is a very compelling state interest to promote honesty in the election of public officers. Freedom of speech does not include a right to purposely, with knowledge of its falsity, publish a false statement about a candidate for public office with the intent to promote the election or defeat of such candidate. * * *" *DeWine, supra,* at 29.

As additional support for our rationale, it is evident that R.C. 3599.091(B)(10) comports with the constitutional standards.

"The rule under which the constitutional guaranty of free speech limits state power, in a civil action brought by a public official for criticism of his official conduct, to an award of damages for a false statement made with actual malice, that is, with knowledge that it was false or with reckless disregard of whether it was false or not, also limits state power to impose criminal sanctions for criticism of the official conduct of public officials." *Garrison* v. *Louisiana, supra* (379 U.S. 64), 13 L.Ed. 2d 125, at headnote one.

The United States Supreme Court, in *Garrison,* held a criminal statute which imposed a penalty for criticism of a public official's conduct to be unconstitutional. However, the Louisiana statute, unlike its Ohio counterpart, permitted punishment for truthful statements if made with "actual malice" and punishment for false statements even though they were not made with knowledge of their falsity or in reckless disregard of whether they were true or false. R.C. 3599.091(B)(10) expressly limits a conviction to cases where there is proof that the statements were known to be false or were made in reckless disregard of falsity. Thus, the statute is in compliance with the United States Supreme Court standards as expressed in *New York Times Co., supra,* and *Garrison, supra.*

Appellant's third assignment of error is also without merit. Appellant contends that the court committed prejudicial error in refusing an *in camera* inspection of Barbara Varanese's grand jury testimony.

The long-standing tradition of grand jury secrecy is well-established in case law. See *State* v. *Rhoads* (1910), 81 Ohio St. 397. There has been a general erosion of this confidentiality at both the federal and state levels. See *Dennis* v. *United States* (1966), 384 U.S. 855, 868-875; *State* v. *Patterson* (1971), 28 Ohio St.2d 181 [57 O.O.2d 422]. The rule as it now exists allows the trial court, exercising its discretion, to produce such testimony if a particularized need is shown. *State* v. *Greer* (1981), 66 Ohio St. 2d 139 [20 O.O.3d 157], paragraph two of the syllabus; see, also, *State* v. *Patterson, supra.*

"Whether particularized need for disclosure of grand jury testimony is

shown is a question of fact; but, generally, it is shown where from a consideration of all the surrounding circumstances it is probable that the failure to disclose the testimony will deprive the defendant of a fair adjudication of the allegations placed in issue by the witness' trial testimony." *State* v. *Greer, supra,* at paragraph three of the syllabus.

In the present case, appellant was afforded an opportunity to impeach Barbara Varanese's trial testimony with excerpts from her testimony before the Ohio Elections Commission. Appellant was apparently unsuccessful in attacking Varanese's veracity through these efforts before the trial court. As credibility is a factor to be weighed by the trial court, this court cannot substitute its own judgment. *Curtis* v. *State* (1925), 113 Ohio St. 187, 209-210; *In re Disbarment of Lieberman* (1953), 163 Ohio St. 35 [56 O.O. 23]. As appellant was permitted to attempt impeachment by other means, she has failed to establish a particularized need. There is no showing that a fair adjudication was denied appellant. No abuse of discretion by the trial court is shown. Thus, the assignment of error is without merit. *Greer, supra.*

Appellant's fourth assignment of error is again without merit.

"An accused is permitted to cross-examine the prosecuting witness as to the witness' pending or contemplated civil action against the accused, in order to demonstrate any possible bias or prejudice arising out of the witness' financial interest in the outcome of the prosecution." *State* v. *Ferguson* (1983), 5 Ohio St. 3d 160, paragraph three of the syllabus.

However, the court in *Ferguson, supra,* acknowledged that in some instances the exclusion of such matters may constitute harmless error:

"* * * [T]he cases where imposition of harmless error is appropriate must involve either overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction. * * *" *Id.* at 166, fn. 5.

There was other significant probative evidence on which the trial court based its verdict of guilty. There was more than one witness, unlike the circumstances in *Ferguson.* As discussed, *supra,* the statements were known to be false; and, the testimony of other witnesses supports this conclusion. Error, if any, was harmless as there was substantial additional evidence to support the judgment. *Id.*

Appellant's fifth assignment of error is with merit.

Generally, the trial court has broad discretion in the sentencing of an accused. *State* v. *Longo* (1982), 4 Ohio App. 3d 136, paragraph two of the syllabus. A reviewing court will not disturb the sentence imposed so long as the sentence is within the statutory limits. *State* v. *Jeffers* (1978), 57 Ohio App. 2d 107, 107-108 [11 O.O.3d 101]. In the present case, appellant objects to the imposition of the condition that she "not engage in any political activity during her two-year probation." The condition does border on the infringement of appellant's First Amendment rights. We, therefore, affirm appellant's conviction but modify her sentence excluding this condition of probation.

Assignments of error one through four are without merit. However, the fifth assignment of error is well-taken. Therefore, we affirm as modified.

*Judgment affirmed,*
*as modified.*

COOK, J., concurs.

DAHLING, J., dissents.

DAHLING, P.J., dissenting. I dissent from the majority opinion in the cases of *State* v. *Davis* and *State* v. *Man-*

*fredi.* I concurred with the majority opinion in reversing *State* v. *Gall* and *State* v. *Schanzel.*

The facts regarding the *Davis* and *Manfredi* cases are not significantly different from the facts of the *Gall* and *Schanzel* cases. The obvious question is why the different result. All four should be treated equally.

The argument is that the defendants either misstated or exaggerated certain actions of the county treasurer. The main complaints were the number of pay raises given by the treasurer, how much money was in the treasurer's vault that should have been deposited, and what agencies the treasurer wished not to fund.

The facts were: the raises were given, millions were in the vault undeposited, and the treasurer made a list of agencies and the amount that could be saved by not funding.

On the three raises, not everyone received the raises. As to the money idle in the vault, this varied from $4 million, to the defendant's claim of $11 million. Finally, the treasurer did submit a list of non-statutory agencies and the amount of their appropriation (about $750,000). It is not clear what the treasurer's point was in this regard. Were these agencies in her view expendable (not funded) or was she simply trying to make the point that her request for more money was minimal?

In my view, any inaccuracies in the defendant's campaign advertisement pales to insignificance when compared to First Amendment rights of freedom of expression.

My dissent is supported by *New York Times Co.* v. *Sullivan* (1964), 376 U.S. 254, and the recent case of *Bose Corp.* v. *Consumers Union of United States, Inc.* (1984), 466 U.S. 485.

In conclusion, I would treat the defendants equally. I would reverse the judgment and discharge the defendants.