**Walter PESTRAK, Plaintiff,**

v.

**OHIO ELECTIONS COMMISSION, et al., Defendants.**

**No. C–2–84–876.**

United States District Court,
S.D. Ohio, E.D.

Oct. 7, 1987.

James Melle, Lucas, Prendergast, Albright, Gibson & Newman, Columbus, Ohio, for plaintiff.

David E. Northrop, John Williams, Office of Atty. Gen., Columbus, Ohio, for defendants.

## MEMORANDUM AND ORDER

GRAHAM, District Judge.

### I. INTRODUCTION

This matter is before the Court on plaintiff's motion to reconsider part of this Court's January 23, 1985 decision wherein defendants who were sued in their official and individual capacities were granted qualified immunity with respect to claims against them in their individual capacities. Also before the Court is the plaintiff's summary judgment motion seeking declaratory judgment that Ohio Rev.Code § 3599.091 is unconstitutional on its face and as applied to him. The parties have agreed to submit these issues to the court for determination based upon the law, their briefs and the record.

Jurisdiction is alleged under 28 U.S.C. §§ 1331, 1343(a)(3), (4), 2201, and 2202; 42 U.S.C. §§ 1983, 1985, 1988 and the First and Fourteenth Amendments.

### II. FACTS

The lucid statement of facts contained in Judge Duncan's July 5, 1984 order is incorporated herein.

Plaintiff, Walter Pestrak, a resident of Trumbull County, Ohio, was a Democratic candidate for the office of Commissioner of the Board of County Commissioners of Trumbull County in the primary election held on May 8, 1984.

The Ohio Elections Commission is created by Ohio Rev.Code § 3517.14 and consists of five members, each of whom was sued in his or her individual and official capacity. Defendant commissioners are Harry Lehman, Mary Jane McFadden, Mary Jane McDonald, Lea Blackburn, and Ralph McNichols.

Plaintiff has also sued the members of the Trumbull County Board of Elections: Nettie B. Ashelman, Mary K. Shaker, Ted Johnson, and William J. Timmons. They are sued only in their official capacity.

Dennis Watkins, Trumbull County Prosecutor, was voluntarily dismissed as a defendant by the plaintiff, while defendants Anthony Latell and The Ohio Election Commission were dismissed from the suit in Judge Duncan's January 23, 1985 memorandum and order.

On April 4, 1984, plaintiff ran a political advertisement in a Trumbull County newspaper strongly suggesting that his opponent in the election, incumbent County Commissioner defendant, Anthony J. Latell, Jr., had illegally awarded a contract for the architectural work on the Trumbull County Juvenile Justice Center.

On April 13, 1984 Anthony Latell filed an affidavit with defendant Elections Commission charging plaintiff with a violation of Ohio Rev.Code § 3599.091(B)(10).

Defendant Latell claimed that he had not illegally awarded the contract in question and that plaintiff's advertisement constituted an intentional falsehood made during the course of an election in violation of § 3599.091(B)(10). Defendant Latell filed an affidavit to that effect with the Ohio elections commission.

Upon the filing of an affidavit by any person, the Ohio elections commission is required to conduct an investigation of the charges made in the affidavit. In this regard the commission may hold a hearing and make findings as to whether Ohio Rev. Code § 3599.091 has been violated. Section 3599.091 for the most part forbids false statements by candidates with respect to specific topics. However, Division (B)(10), which the plaintiff was found guilty of violating, applies to unenumerated topics. It provides:

(B) No person, during the course of any campaign for nomination or election to public office or office of a political party, by means of campaign materials, including sample ballots, an advertisement on radio or television or in a newspaper or periodical, a public speech, press release, or otherwise, shall knowingly and with intent to affect the outcome of such campaign do any of the following:

(10) Post, publish, circulate, distribute, or otherwise disseminate a false statement, either knowing the same to be false or with reckless disregard of whether it was false or not, concerning a candidate that is designed to promote the election, nomination, or defeat of the candidate....

If the commission finds a violation, it can levy a fine of up to one thousand dollars, issue a cease and desist order or transmit its findings to the county prosecutor for institution of criminal prosecution.

Pursuant to Ohio Rev.Code § 3599.091(C) and Ohio Admin.Code § 111:1–1–10, the Commissioners scheduled a hearing on May 1, 1984, to determine whether plaintiff Pestrak violated § 3599.091. That hearing was continued until May 7, 1984, the day before the election. A transcript of that lengthy hearing was stipulated to by the parties and was received into evidence at the hearing on plaintiff's motion for a preliminary injunction.

Plaintiff's request for postponement of the hearing until after the election, as well as plaintiff's request that this court enjoin the conduct of that hearing, were denied.

Following the hearing on May 7, 1984, no cease and desist order was issued. However, the election commission did conclude at that time that there was probable cause to believe that a violation of the law had occurred and the commission's findings were to be transmitted to the prosecutor for Trumbull County.

The results of the hearing before the elections commission were made known to the voters of Trumbull county before the

election on May 8, 1984. Plaintiff Pestrak was not elected.

Plaintiff then filed a motion for a preliminary injunction which sought to enjoin the transmittal of the commission's findings to the county prosecutor. Judge Duncan denied that motion and the transmittal of those findings occurred on June 18, 1984. The Trumbull county prosecutor subsequently declined to proceed with prosecution.

The plaintiff was charged with violation of Ohio Rev.Code § 3599.091(B)(10). The hearings were conducted pursuant to § 3599.091(C) and (D). There have been numerous amendments to § 3599.091 since 1984 when the plaintiff was charged.[1]

1. Ohio Rev.Code § 3599.09.1:

(A) No person, during the course of any campaign for nomination or election to public office or office of a political party, shall knowingly and with intent to affect the outcome of such campaign do any of the following:

(1) Serve, or place another person to serve, as an agent or employee in the election campaign organization of a candidate for the purpose of acting to impede the conduct of the candidate's campaign for nomination or election or of reporting information to the employee's employer or the agent's principal without the knowledge of the candidate or his organization;

(2) Promise, offer, or give any valuable thing or valuable benefit to any person who is employed by or is an agent of a candidate or his election campaign organization for the purpose of influencing the employee or agent with respect to the improper discharge of his campaign duties or to obtain information about the candidate or his campaign organization.

(B) No person, during the course of any campaign for nomination or election to public office or office of a political party, by means of campaign materials, including sample ballots, an advertisement on radio or television or in a newspaper or periodical, a public speech, press release, or otherwise, shall knowingly and with intent to affect the outcome of such campaign do any of the following:

(1) Use the title of an office not currently held by a candidate in a manner that implies that the candidate does currently hold that office or use the term "re-elect" when the candidate has never been elected at a primary, general, or special election to the office for which he is a candidate;

(2) Make a false statement concerning the formal schooling or training completed or attempted by a candidate; a degree, diploma, certificate, scholarship, grant, award, prize, or honor received, earned, or held by a candidate; or the period of time during which a candidate attended any school, college, community technical school, or institution;

(3) Make a false statement concerning the professional, occupational, or vocational licenses held by a candidate, or concerning any position the candidate held for which he received a salary or wages;

(4) Make a false statement that a candidate or public official has been indicted or convicted of a theft offense, extortion, or other crime involving financial corruption or moral turpitude;

(5) Make a statement that a candidate has been indicted for any crime or has been the subject of a finding by the Ohio elections commission without disclosing the outcome of any legal proceedings resulting from the indictment or finding;

(6) Make a false statement that a candidate or official has a record of treatment or confinement for mental disorder;

(7) Make a false statement that a candidate or official has been subjected to military discipline for criminal misconduct or dishonorably discharged from the armed services;

(8) Falsely identify the source of a statement, issue statements under the name of another person without authorization, or falsely state the endorsement of or opposition to a candidate by a person or publication;

(9) Make a false statement concerning the voting record of a candidate or public official;

(10) Post, publish, circulate, distribute, or otherwise disseminate a false statement, either knowing the same to be false or with reckless disregard of whether it was false or not, concerning a candidate that is designed to promote the election, nomination, or defeat of the candidate. As used in this section, "voting record" means the recorded "yes" or "no" vote on a bill, ordinance, resolution, motion, amendment, or confirmation.

(C) Before any prosecution may commence, a complaint shall be presented to the Ohio elections commission by an affidavit of any person, made on personal knowledge and subject to the penalties for perjury, setting forth any violation of division (A) or (B) of this section. The commission shall proceed to investigate the charges made in the affidavit, and shall, whenever possible, complete the investigation of all matters before an election. The commission or a member of the commission may administer oaths, and the commission may issue and enforce subpoenas with regard to an investigation under this section in the same manner as provided in division (C) of section 3517.15 of the Revised Code. The commission shall issue copies of its findings to the committees or persons involved in its investigation.

(D)(1) If the commission finds that division (A) or (B) of this section has been violated, it shall do only one of the following:

(A) Impose a fine not to exceed one thousand dollars;

(B) Forthwith transmit a copy of its findings and the evidence to the prosecuting attorney of the appropriate county.

In Section V of this memorandum, this Court has addressed the question of whether the current version of Ohio Rev.Code § 3599.091 is constitutional. For the purpose of the ensuing discussion, the significant changes in the statute's language and scope since May, 1984 are: the change in division (B) from "no person ... shall purposely do any of the following:" to the present wording of "no person ... shall knowingly and with intent to effect the outcome of such campaign do any of the following"; and the separation of division (C) into several divisions. The recent amendments to these divisions provide that if the commission finds that there has been a violation it must impose a fine or transmit a copy of its findings to the prosecutor. Additionally, a person adversely affected by the imposition of a fine may appeal to the court of common pleas pursuant to Ohio Rev.Code § 119.12.

### III. QUALIFIED IMMUNITY

■ In Judge Duncan's January 23, 1985 decision, he granted qualified immunity to defendants Lehman, McFadden, McDonald, Blackburn and McNichols who were sued in their individual capacities. As a result of that decision, they cannot be held liable for money damages. *Kentucky, Bureau of State Police v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Plaintiff's motion to reconsider does not convince this court that that ruling was in error.

In 1984, when this case arose, the election commission members were acting pursuant to a statutory scheme enacted by the Ohio Legislature. Such statutory enactments are presumptively constitutional. Furthermore, in 1974, the Franklin County Court of Appeals had held that Ohio Rev. Code § 3599.091 was constitutional. *DeWine v. Ohio Elections Commission,* 61 Ohio App.2d 25, 399 N.E.2d 99 (1978). In Section V of this decision, the Court explains why it disagrees with the *DeWine* decision; nevertheless, for purposes of determining whether the defendants are entitled to qualified immunity under the objective *Harlow* standard, the Court determines that in 1984 a "reasonably competent public official" in like circumstances would not have reasonably known that Ohio Rev. Code § 3599.091 was unconstitutional in any respect. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

However, the named defendants and their successors in office in their official

(2) Notwithstanding any provision of Chapters 1901., 1905., 1907., and 2931. of the Revised Code, the common pleas court has exclusive original jurisdiction over prosecutions under this section.

(3) Any person adversely affected by the action of the commission under division (D)(1)(a) of this section may appeal from such action in accordance with section 119.12 of the Revised Code.

(E) If the commission finds upon the preponderance of the evidence that the violation is a continuing one, or if it has reason to believe that recurrence of the violation is imminent, it may issue an order to cease and desist. The commission or the person who filed the affidavit, or the treasurer of the campaign committee of any candidate who filed an affidavit may bring an action for an injunction against any person violating or attempting to violate the order. Any person adversely affected by a cease and desist order of the commission may appeal as provided in section 119.12 of the Revised Code. No appeal, however, shall stay enforcement of a cease and desist order. In an action for injunction to enforce any final order of the commission brought pursuant to this section, the findings of the commission, after hearing, are prima-facie evidence of the facts found.

(F) In any action before the commission, if the allegations of the person who filed the affidavit are not proved, and the commission seeks neither civil nor criminal relief in court, the commission may find that the complaint is frivolous and order the complainant to pay costs. If so, the person filing the complaint may be required to pay such costs of the commission as would be assessed for the same service in a civil action before the court of common pleas. Such costs paid to the commission shall be deposited in the general revenue fund of the state. The commission shall provide each person under investigation, by mail or in person, prior to each meeting of the commission at which the person's presence is requested, a notice for the hearing, and shall supply to each person under investigation, prior to the person's first appearance before the commission, a statement of the legal rights and obligations of those under investigation by the commission.

(G) Whoever violates division (A) or (B) of this section is guilty of unfair campaign practices, a misdemeanor of the first degree.

capacity are still subject to declaratory and injunctive orders of this Court with respect to the constitutionality of the statute at issue. *Graham, supra.*

The plaintiff's motion to reconsider the granting of qualified immunity is therefore DENIED.

## IV. STANDING

██ Defendants assert in their memorandum contra plaintiff's motion for summary judgment that the plaintiff does not have standing to attack the constitutionality of the amended and current version of Ohio Rev.Code § 3599.091. (Page's 1986 Supp.). The Court disagrees.

Plaintiff has been subjected to the provisions of the statute that were in effect in 1984. His affidavit asserts that he intends to be a candidate for office in the future. The fact that specific sections of the present statute were not applied to the plaintiff does not invalidate his right to challenge the constitutionality of the provisions. Where a statute implicating First Amendment rights applies to a plaintiff's activities, the Supreme Court has held that it may be challenged on constitutional grounds despite the fact that the plaintiff has not yet been charged with violation of that statute. *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *New York Civil Liberties Union, Inc. v. Acito,* 459 F.Supp. 75 (S.D.N.Y.1978);

> [t]he transcendent value to a society of constitutionally protected expression is deemed to justify allowing 'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity' (citations omitted) ... This is deemed necessary because persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of applications to protected expression.

*Gooding v. Wilson* 405 U.S. 518, 521, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972), *quoting, Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

Therefore, this Court holds that the plaintiff has standing to challenge the current version of Ohio Rev.Code § 3599.091.

## V. CONSTITUTIONALITY OF OHIO REV.CODE § 3599.091

██ "It is not the function of the federal courts to place an imprimatur on those statutes deemed wise and those deemed foolish," rather this Court's inquiry is limited to consideration of whether a statute is constitutional. *Lukens v. Brown,* 368 F.Supp. 1340, 1343 (S.D.Ohio 1974). However, while state courts are the final expositors of state law, the federal courts have the duty and the obligation to decide federal constitutional questions. *Zwickler v. Koota,* 389 U.S. 241, 252, 88 S.Ct. 391, 397, 19 L.Ed.2d 444 (1967); *Dombrowski, supra.* Federal courts are not required to abide by a state court's determination of whether a state statute meets the requirements of the United States Constitution. *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

██ Plaintiff alleges that Ohio Rev.Code § 3599.091 is unconstitutional because it is both void for vagueness and overly broad. The vagueness doctrine and the overbreadth doctrine are closely related. A criminal statute is vague if persons of ordinary intelligence are unable to ascertain just what actions are illegal. *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). Clear guidelines must exist regarding what is illegal so that persons will not be chilled in the exercise of their fundamental First Amendment rights for fear that they will be prosecuted. *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84

L.Ed. 1213 (1940). However, statutes need not set out with perfect clarity every factual situation that might arise. Failure to do so does not automatically render a statute void for vagueness. *Record Revolution No. 6, Inc. v. City of Parma,* 492 F.Supp. 1157 (N.D.Ohio 1980) *aff'd on remand,* 709 F.2d 534 (1983).

■ The overbreadth doctrine applies to statutes that do not "aim specifically at evils within the allowable area of government control ..., but sweep within their ambit other activities that constitute an exercise" of protected rights. *Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 742, 84 L.Ed. 1093 (1940). Statutes that apply to "pure speech" such as the statutory scheme at issue, are subject to strict scrutiny. *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The state must have more than a rational or legitimate interest, rather it must justify any encroachment upon First Amendment rights with a compelling interest. The Court must then analyze whether the state has chosen the least intrusive means to do so, keeping in mind that "precision of regulation must be the touchstone" in an area so closely encroaching upon our precious freedoms. *NAACP v. Button,* 371 U.S. at 438, 83 S.Ct. at 340.

■ States have a legitimate interest in regulating elections and Ohio, like many states, has enacted a comprehensive statutory scheme for governing various aspects of the election process. The Tenth Amendment expressly reserves to the state the power to regulate elections. *Oregon v. Mitchell,* 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970). The state's important regulatory interests are generally sufficient to justify reasonable, non-discriminatory restrictions that do not unreasonably burden citizens' constitutional rights. *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974).

Constitutional challenges to specific provisions of a State's election laws therefore cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions. *Storer, supra,* at 730 [94 S.Ct. at 1279]. Instead, a court must resolve such a challenge by an analytical process that parallels its work in ordinary litigation. It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional. (Citations omitted). The results of this evaluation will not be automatic; as we have recognized, there is 'no substitute for the hard judgments that must be made.' *Storer v. Brown, supra,* at 730 [94 S.Ct. at 1279].

*Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983).

■ Robust political debate is at the heart of our political system and whenever a state seeks to control that debate, especially in the context of a political campaign, it must have a compelling reason to do so. *Brown v. Hartlage,* 456 U.S. 45, 102 S.Ct. 1523, 71 L.Ed.2d 732 (1982). As stated in *Mills v. Alabama,* 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966):

Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that amendment was to protect the free discussion of governmental affairs. This of course includes discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes.

*Mills,* 384 U.S. at 218, 219, 86 S.Ct. at 1437.

Wide-open debate needs its greatest protection during a political campaign for office. *Monitor Patriot Co. v. Roy,* 401 U.S. 265, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971).

"The First Amendment, said Judge Learned Hand, 'presupposes that right conclusions are more likely to be gathered out of a multitude of tongues, than through any kind of authoritative selection. To many this is, and always will be, folly; but we have staked upon it our all.'" *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1963).

Ohio Rev.Code § 3599.091(B)(10) criminalizes speech made during a political campaign which meets the *New York Times v. Sullivan* standard for defamatory speech and as a result, is not entitled to the protection of the First Amendment. In *New York Times,* the Supreme Court held that a public official may not recover for defamation unless that official "proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times,* 376 U.S. at 280, 84 S.Ct. at 726. Mere proof of falsity is insufficient because "[U]nder the First Amendment there is no such thing as a false idea.... But there is no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974). However, "[A]lthough the erroneous statement of fact is not worthy of constitutional protection, it is nevertheless inevitable in free debate." *Id.* at 340, 94 S.Ct. at 3007. In order to reconcile the interests of constitutional free speech and a person's interest in his good name, "[t]he burden of proving 'actual malice' requires the plaintiff to demonstrate with clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubts as to the truth of his statement." *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 511 n. 30, 104 S.Ct. 1949, 1965 n. 30, 80 L.Ed.2d 502 (1983), *citing, New York Times and Gertz, supra,* and *St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968).

■ States seeking to regulate elections and campaign speech and plaintiffs seeking damages for defamatory speech are both confronted with the broad protection that the First Amendment gives to speech in public matters. *Brown v. Hartlage,* 456 U.S. at 52, 102 S.Ct. at 1528.

Although the state interest in protecting the political process from distortions caused by untrue and inaccurate speech is somewhat different from the state interest in protecting individuals from defamatory falsehoods, the principles underlying the First Amendment remain paramount ... '[W]e depend for correction not on the conscience of judges and juries but on the competition of other ideas.' *Gertz, supra* at 339–340 [94 S.Ct. at 3006–3007]. In a political campaign, a candidate's factual blunder is unlikely to escape the notice of and the correction by, the erring candidate's opponent. The preferred First Amendment remedy of 'more speech, not enforced silence' thus has special force. (Citation omitted).

*Id.* at 61, 102 S.Ct. at 1533.

■ The state can only impose criminal sanctions on statements criticizing public officials if the statements are false and if they are made with knowledge of their falsity or with reckless disregard of whether they were false or not. "The *New York Times* rule ... absolutely prohibits punishment of truthful criticism." *Garrison v. Louisiana,* 379 U.S. 64, 78, 85 S.Ct. 209, 217, 13 L.Ed.2d 125 (1964).

■ The defendants argue that the statute at issue is not void for vagueness for two reasons: 1) it expressly incorporates the *New York Times* language in § 3599.091(B) and (B)(10); and 2) state courts have construed the statute as indeed incorporating the *New York Times* standard, *DeWine v. Ohio Elections Commission,* 61 Ohio App.2d 25, 399 N.E.2d 99 (1978); *State v. Davis,* 27 Ohio App.3d 65, 499 N.E.2d 1255 (Geauga Cty.1985). "A state statute must be carefully drawn or be authoritatively construed to punish only unprotected speech." *Gooding v. Wilson,* 405 U.S. 518, 522, 92 S.Ct. 1103, 1106, 31 L.Ed.2d 408 (1972); *citing, Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed.2d 1031 (1942) wherein a crim-

inal statute whose wording was vague was upheld as constitutional because the New Hampshire Supreme Court had limited the application of the statute at issue to "fighting words" which are not constitutionally protected.

In the *DeWine* decision, an Ohio appellate court held that the *New York Times* standard for defamation was incorporated in § 3599.091. However, the appellate court reversed the trial court which had held that the commission's findings had to be supported by evidence that met the criminal standard of "proof beyond a reasonable doubt." The appellate court instead ruled that the election commission could find a violation based upon "the greater weight of the evidence," and that the criminal standard of proof would only apply to any prosecution subsequently initiated by the county prosecutor. The function of the Ohio elections commission was held to "be somewhat similar to that of a grand jury in felony cases," while the "purpose [of the statute] is to prevent the promiscuous filing of criminal charges in court during the heat of a political campaign, requiring instead that a preliminary determination be made by the Ohio elections commission prior to the commencement of any prosecution." *DeWine*, 399 N.E.2d at 104.

It is true that a grand jury can issue an indictment for a crime based upon probable cause and that the criminal standard of proof beyond a reasonable doubt will apply at the ensuing trial. However, the election commission proceedings are considerably different from those of a grand jury. Unlike a grand jury, the proceedings of the election commission are not secret. *State v. Rhoads*, 81 Ohio St. 397, 91 N.E. 186 (1910); *State v. Davis, supra*. Ohio Admin.Code 111:1–1–12 requires the election commission to hold open hearings and to notify any news media that request such notification. The hearings become part of the media "hype" surrounding a campaign, and they can be manipulated by candidates as is clearly demonstrated by the deposition of Mr. Austin, who testified on behalf of the plaintiff at the preliminary injunction hearing.

Unlike a grand jury, if the Ohio elections commission "finds that division (A) or (B) of this section has been violated, it *shall* do *only one* of the following:" impose a civil fine not to exceed one thousand dollars or transmit its findings to the county prosecutor. Ohio Rev.Code § 3599.091(D)(1)(A). Furthermore, it can issue cease and desist orders. § 3599.091(E). The election commission, in effect, operates as a court when imposing civil penalties, and issuing cease and desist orders and as a public grand jury with respect to findings of fact for criminal prosecutions.

The language of the statute and the construction of it by Ohio courts do not sufficiently establish the appropriate standard of clear and convincing proof as required by the Constitution. The language of division (D)(1) of § 3599.091 does not provide for any standard of proof, but merely states: "If the commission *finds* that division (A) or (B) has been violated ..." while division (E) states, "If the commission finds upon the *preponderance of the evidence* that the violation is a continuing one ... it may issue an order to cease and desist." (Emphasis added). Ohio Admin.Code § 111:1–1–08(G) states, "The commission shall not be bound by the rules of evidence ... but shall take into consideration all reliable, probative and substantial evidence which may tend to prove or disprove the charge set forth in the report or affidavit."

The above standards are inadequate under the *New York Times* criteria for assessing liability for defamatory speech by political candidates during an election campaign.

The importance of this evidentiary burden was recently underscored by the Supreme Court in *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In that case, the Supreme Court held that a civil trial court ruling on a motion for summary judgment in a defamation case, must be guided by the *New York Times* "clear and convincing" evidentiary standard in determining whether a genuine factual issue of actual malice exists, that is, whether the evidence is such

that a reasonable jury might find that actual malice had been shown with convincing clarity. Absent evidence of "clear and convincing" facts a properly supported motion for summary judgment is to be granted.

The uncertainty of the language of Ohio Rev.Code § 3599.091 and the construction of it by Ohio courts results in a statute that does not impose the correct burden of proof. However, even if the correct standard of proof and burden of persuasion under the New York Times standard were used, divisions (C), (D), and (E) would still be unconstitutional because they are overly broad.

Divisions (C), (D) and (E) of § 3599.091 are the enforcement provisions of the statute. A very similar administrative scheme was held unconstitutional by a three judge panel in *Vanasco v. Schwartz*, 401 F.Supp. 87 (1975), *summarily aff'd*, 423 U.S. 1041, 96 S.Ct. 763, 46 L.Ed.2d 630 (1976). Although that decision was only summarily affirmed, this Court is persuaded that the rationale and the authorities cited in *Vanasco* and subsequent Supreme Court decisions support this Court's determination with respect to Ohio Rev.Code § 3599.-091(C), (D) and (E). *See, Brown v. Hartlage*, 456 U.S. 45, 102 S.Ct. 1523, 71 L.Ed.2d 732 (1982); *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

The New York election statutes at issue in *Vanasco* provided for an administrative hearing before a politically appointed board that was required to find a violation by only a "substantial" amount of evidence. If a violation were found, the board could issue a report of its findings and conclusions. A one thousand dollar fine could be levied or a suit filed in state court to obtain an injunction. There was some question whether the board's decisions could be appealed for judicial review. *Id.* at 99.

The *Vanasco* court held that "judicial participation is particularly necessary when important First Amendment expression is involved" because there are fundamental, inherent differences between court and administrative proceedings, especially at the state level where administrative bodies are often seen primarily as political bodies. The court in *Vanasco* held that the statutes involved were overly broad and created a substantial "chill" on protected political speech because:

> A respondent in a code proceeding faces the possibility of final action—which could be taken within a few days of an election—based upon findings made not in a judicial proceeding but rather in an administrative proceeding by a board whose members are recommended by the legislative leaders and state chairmen of the two major political parties ... and where proof may be less than clear and convincing.

*Id.* at 100.

 Ohio's election committee is made up of five political appointees. Ohio Rev. Code § 3517.14 (Page's 1986 Supp.). The commission assesses civil fines and issues cease and desist orders on a constitutionally impermissible modicum of evidence. The provision for judicial review pursuant to § 119.12 as provided under divisions (D)(3) and (E) of § 3599.091 does not afford adequate and timely protection. The court of common pleas in reviewing an administrative determination may affirm the order if it is "supported by reliable, probative, and substantial evidence and is in accordance with law." Ohio Rev.Code § 119.12 (Page's 1986 Supp.). Even if a court finds "in accordance with law" that the election commission failed to follow the standard and burden of proof mandated by *New York Times v. Sullivan*, that judicial determination comes after the notoriety and adverse publicity that can occur as a result of the commission's prior determination. When anyone seeks to restrain an important First Amendment right such as political speech, only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression; "only a procedure *requiring a judicial* determination suffices to impose a valid final restraint." *Southeastern Promotions Ltd. v. Conrad*, 420 U.S. 546, 559–60, 95 S.Ct. 1239, 1247, 43 L.Ed.2d 448 (1975) *quoting Freedman v. Maryland*, 380 U.S.

51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). (Emphasis added).

To find a violation of Ohio Rev.Code § 3599.092 without a judicial proceeding is a form of prior restraint even though the allegedly false speech has already been made. As Judge Bork stated in *Lebron v. Washington Metropolitan Area Transit Authority*, 749 F.2d 893 (D.C.Cir.1984), "Prior administrative restraint of distinctively political messages on the basis of their alleged deceptiveness is unheard-of—and deservedly so." *Id.* at 898, *citing Vanasco, supra*, as authority. Judge Bork also stated that administrative restraint, even if in a nonpolitical area, can only be temporary pending an agency's seeking of a judicial restraint. Only "in extreme cases [will] prior *judicial* restraint on the basis of falsity ... be appropriate." (Emphasis in original), *citing Tomei v. Finley*, 512 F.Supp. 695 (N.D.Ill.1981) wherein the court, after a hearing, enjoined use of the acronym "REP" as a "deliberately false expression to the voters of the idea that defendants are Republicans." *Id.*, at 698.

The First Amendment rights of political candidates and society's interest in robust political debate are simply too important to sidestep judicial determination of whether speech violates the line between protected and unprotected speech.

It is this same rationale that requires independent appellate review of First Amendment issues. As Justice Stevens, writing for the majority in *Bose*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1983), stated:

> The requirement of independent appellate review reiterated in *New York Times Co. v. Sullivan* is a rule of federal constitutional law. ... [I]t is law in its purest form under our common-law heritage. It reflects a deeply held conviction that judges—and particularly Members of this Court—must exercise such review in order to preserve the precious liberties established and ordained by the Constitution. The question whether the evidence in the record in a defamation case is of the convincing clarity required to strip the utterance of First Amendment pro-

tection is not merely a question for the trier of fact. Judges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of 'actual malice.'

*Id.* at 510–11, 104 S.Ct. at 1965.

In conclusion, this Court holds that Ohio Rev.Code § 3599.091(C), (D) and (E) are unconstitutional because they require an administrative adjudication which constitutes a prior restraint on constitutionally protected speech, and because they permit liability to be assessed upon evidence that is less than clear and convincing.

Because of this court's holding, the question of the unconstitutionality of Ohio Rev. Code § 3599.091(B)(10) as applied to the plaintiff need not be addressed.

In addition to declaratory relief, the plaintiff has requested this court to order a new election. This extraordinary remedy is not beyond the equity powers of a federal court. However, the facts in this complaint are not of the egregious nature approximating criminal behavior that would necessitate such a remedy. *Donohue v. Board of Elections of State of New York*, 435 F.Supp. 957 (E.D.N.Y.1976).

Plaintiff's motion to reconsider this court's January 23, 1985 decision is DENIED. Plaintiff's motion for summary judgment is GRANTED.

It is so ORDERED.