539 So.2d 149 (1988)
Brian W. DOWLING
v.
ALABAMA STATE BAR.
87-228.
Supreme Court of Alabama.
September 23, 1988.
Rehearing Denied January 13, 1989.
*150 Harry Lyon, Pelham, for appellant.
John A. Yung IV, Montgomery, for appellee.
PER CURIAM.
This case involves an action brought by the Alabama State Bar against the appellant, Brian Dowling, alleging failure to comply with DR 2-101(A) and DR 1-102(A)(4) of the Alabama Code of Professional Responsibility. The case was heard on October 16, 1987, and the Disciplinary Board found appellant guilty of both charges and held the appropriate discipline to be public censure. The Board denied appellant's motions for directed verdict at the close of the Bar's case and at the close of all the evidence, and denied his motion for JNOV or new trial.
Appellant was a practicing attorney in Dothan at the time this action arose, and he was a Republican candidate for Houston County district judge in the 1986 election. As part of his campaign, appellant had printed several cards reading "Judge Brian Dowling for District Judge, Houston County." Appellant, admittedly, is not, and has never been, a judge.
Appellant marked several of these cards with the notation "November 4th" and placed them on his secretary's desk so that visitors to his office might take them. On May 27, 1986, a substantially similar card was mailed to the Judicial Inquiry Commission with the anonymous complaint that Dowling was not, and had never been, a judge. The complaint was forwarded to the Alabama State Bar.
The Bar's case against appellant under the Disciplinary Rules cited above consisted of the card and the anonymous letter, together with the testimony of the clerk of the Supreme Court and other exhibits showing the path these items had followed from the Judicial Inquiry Commission to the Alabama State Bar.
Appellant answered the complaint as follows:
(1) the copy of the card attached to the Bar's complaint was not a "true copy";
(2) he never delivered a misleading card to anyone;
(3) no one was ever misled by any such card;
(4) no proof existed that the cards were misleading; and
(5) the cards are not in any way improper or misleading, especially when they "clearly" indicated on the reverse side that appellant was not, and never had been, a judge.
Appellant testified that he meant to use the word "judge" as a verb, asking the voters to "judge" him to be the best candidate based on his credentials listed on the reverse side of the card. He further testified that no one could have been misled by the cards because "everybody" in Dothan knew he was a lawyer and not a judge, although he conceded that, taken "out of context," the cards could be misleading. Appellant added that he thought his prosecution was a politically motivated attempt by Houston County Democrats, to whom he referred as "the old Wallace crowd," to discredit and destroy his campaign.
The Disciplinary Board found appellant guilty of the violations charged. He appeals from the denial of his motion for directed verdict at the close of the Bar's case and the denial of his motion for JNOV. The appellant asserts three bases for overturning the Disciplinary Board's decision, which are all addressed individually below.
I. The appellant argues that the Disciplinary Board erred in denying his motion for directed verdict or his motion for JNOV because, he says, sufficient evidence was not presented.
*151 A charge brought against an attorney in a disciplinary proceeding must be proved by clear and convincing evidence. Jackson v. Alabama State Bar, 462 So.2d 365 (Ala.1985). The appellant contends that the charges brought against him were not proved by clear and convincing evidence. However, Dowling did not deny the essential factual allegations that were specified in the disciplinary charges against him. The complaint contained essentially the following allegations:
1. That the appellant was a licensed practicing attorney at all pertinent times;
2. that the appellant was a candidate for district judge;
3. that as part of his campaign, the appellant had printed and distributed a certain campaign card, a copy of which was attached to the complaint; that the card read, in big letters on the front of the card, "Judge Brian Dowling for District Judge";
4. that the appellant has never been a judge in any judicial system;
5. that in doing the above described acts the appellant made a false or misleading communication about himself, thereby violating DR 2-101(A) and DR 1-102(A)(4).
The appellant denied in his answer ever delivering a misleading card to anyone, but when he testified before the Bar he admitted that he had distributed the campaign card. He claimed in his answer that the copy of the card attached to the complaint was not a true copy of the card at issue. He did not specify how the copy attached to the complaint was different from the card at issue. It is apparent from the hearing that the only difference the appellant claims is that "November 4th" was not handwritten on the card.
Therefore, we must conclude that the charge that the appellant was guilty of a misrepresentation was proved by clear and convincing evidence, based on the following facts: 1) the substantive charges were not denied, and were, therefore, admitted (Rule 8(d), A.R.Civ.P.); 2) Dowling testified that he approved the final design of the cards; 3) he admitted that the cards could be misleading; and 4) he admitted that he had distributed the cards before he wrote the Bar on July 7, 1988.
II. The appellant argues that DR 2-101(A) and DR 1-102(A)(4) are so vague or overbroad as to violate the First Amendment to the United States Constitution when applied to him in this case.
In First Amendment cases, an overbroad statute or rule is one that is designed to burden or punish activities that are not constitutionally protected, but which also includes within its scope activities that are protected by the First Amendment. 3 Rotunda, Nowak, Young, Treatise on Constitutional Law Substance and Procedure, § 20.8 (1986); NAACP v. Button, 371 U.S. 415, 432, 83 S.Ct. 328, 337, 9 L.Ed.2d 405 (1963). However, the overbreadth of a statute or rule must be not only real, but substantial as well, judged in relationship to the statute or rule's plainly legitimate sweep. Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973).
A statute or rule is void for vagueness when its prohibition is so vague as to include protected speech or as to leave an individual without knowledge as to the nature of speech that is prohibited. See Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); NAACP v. Button, 371 U.S. 415, 432, 433, 83 S.Ct. 328, 337, 338, 9 L.Ed.2d 405 (1963); 3 Rotunda, Nowak, Young, Treatise on Constitutional Law Substance and Procedure, § 20.9 (1986). Clear guidelines must exist regarding what is illegal, so that there will be no "chilling" effect on the exercise of free speech. NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).
While the First Amendment guarantees the right to free speech, government is not prevented from proscribing certain speech. To be precise, demonstrable falsehoods are not protected by the First Amendment in the same manner as truthful statements. Brown v. Hartlage, 456 U.S. 45, 60, 102 S.Ct. 1523, 1532, 71 L.Ed.2d 732 (1982); Gertz v. Robert Welch, Inc., 418 U.S. 323, 340, 94 S.Ct. 2997, 3007, 41 *152 L.Ed.2d 789 (1974). In Vanasco v. Schwartz, 401 F.Supp. 87, 91-92 (S.D.N.Y. 1975) the federal district court, tracking the language of the Supreme Court, held:
"`That speech is used as a tool for political ends does not automatically bring it under the protective mantle of the Constitution. For the use of the known lie as a tool is at once at odds with the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected. Calculated falsehood falls into that class of utterances which are "no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed...." Chaplinsky v. New Hampshire, 315 U.S. 568, 572, [62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942)]. Hence the knowing false statement and the false statement made with the reckless disregard of the truth, do not enjoy constitutional protection.'"
Vanasco v. Schwartz, 401 F.Supp. 87, 91-92 (S.D.N.Y.1975), quoting Garrison v. Louisiana, 379 U.S. 64, 75, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964). Therefore, even speech made in a political context may be prohibited. However, "laws regulating campaign advertisements must aim specifically at evils within the allowable area of governmental control ... and not sweep within their ambit other activities that constitute an exercise of protected rights." Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).
The language of DR 2-101(A) and DR 1-102(A)(4) is clear:
DR 2-101:
"A lawyer shall not make or cause to be made a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:
"(A) Contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading...."
DR 1-102:
"(A) "A lawyer shall not:
"...
"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation, nor be guilty of willful misconduct."
DR 2-101(A) is clear in its meaning that misrepresentations are prohibited by a lawyer where they involve the lawyer or his services. However, misrepresentations made by a lawyer in a political context must be shown to have been made with knowledge of their falsity or with reckless disregard of the truth. Cf. New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Gertz v. Robert Welch, Inc., 418 U.S. 323, 340, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974). Otherwise, there would be a danger of chilling the exercise of protected speech, because while an erroneous statement is not worthy of constitutional protection, it is nevertheless inevitable in free debate. Gertz, 418 U.S. at 340, 94 S.Ct. at 3007. An innocent mistatement will not be grounds for punishment.
We construe DR 2-101(A), as it relates to restricting an attorney's speech in a political context, to be limited to misrepresentations that are made with knowledge of their falsity or with reckless disregard of the truth. Also, we construe DR 1-102(A)(4), as it relates to restricting an attorney's speech in a political context, to be limited in exactly the same way as DR 2-101(A). In the present case the appellant obviously knew that he was not a judge. Dowling admitted that the statement could mislead a person and cause him to believe that Dowling was a judge. The evidence that the appellant intentionally made the statement, and his admission that he was aware of the fact that it could be misleading, support the conclusion that he made the statement with an intent to deceive. Cf. Myers v. Baker, 24 Ala.App. 387, 135 So. 643 (1931) (one is presumed to intend that which he does); 31A C.J.S. Evidence § 131 (1964).
Under the above analysis, these two Disciplinary Rules are not unconstitutionally vague or overbroad, because they are *153 drawn and interpreted so narrowly that they do not sweep within their ambit protected speech; furthermore, they are written precisely enough that the appellant knew, or should have known, that his conduct was prohibited. See Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (a criminal statute is not unconstitutionally vague if persons of ordinary intelligence can determine exactly what acts are prohibited). Rule 2(a), Alabama Rules of Disciplinary Enforcement, provides:
"Acts or omissions by an attorney, individually or in concert with any other person or persons, which violate the Attorney's Oath of Office or Code of Professional Responsibility of the Alabama State Bar as from time to time shall be in effect in the State of Alabama, shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship."
See also Ex parte Montgomery, 244 Ala. 91, 12 So.2d 314 (1943). Therefore, the appellant should also have known that his conduct was prohibited even though it did not necessarily involve the practice of law.
III. The appellant argues that DR 2-101(A) and DR 1-102(A)(4) amount to a prior administrative restraint of constitutionally protected speech.
There is no prior administrative restraint involved in the present case. The appellant cites Vanasco v. Schwartz, 401 F.Supp. 87, 91-92 (S.D.N.Y.1975), and Pestrak v. Ohio Elections Comm'n, 670 F.Supp. 1368 (S.D. Ohio 1987), for the proposition that DR 2-101(A) and DR 1-102(A)(4) are unconstitutional prior restraints on speech. However, those cases can be distinguished from the present case.
As to prior restraint, the Vanasco and Pestrak courts held that when speech is reviewed by an administrative agency that imposes restraints upon the exercise of speech and does so by use of a standard of proof less than a "clear and convincing evidence" standard and there is no provision for prompt judicial review, then this type of administrative hearing amounts to an unconstitutional prior restraint. Vanasco v. Schwartz, 401 F.Supp. at 99; Pestrak v. Ohio Elections Comm'n, 670 F.Supp. at 1376. Those cases were not traditional "prior restraint" cases. In each case, the speech had already occurred, whereas in a traditional prior restraint case the speech is prohibited before it is ever spoken. See, e.g., Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). The reason it was considered prior restraint was because the plaintiffs in Vanasco and Pestrak were prevented from making any further statements, on the basis of an administrative hearing that did not require clear and convincing evidence. The implication in the opinions is that there would have been no prior restraint had there been adequate standards of proof, along with provision for adequate judicial review.
The Alabama Rules of Disciplinary Procedure provide for adequate judicial review. First, the present case is similar to Pestrak and Vanasco, because there is no traditional form of prior restraint here. There was administrative action taken after the speech in question occurred. However, the difference between the present case and the Pestrak and Vanasco cases is that 1) in this case clear and convincing proof was required and 2) in this case there was provision for adequate judicial review. No action may be taken against an attorney based on the findings of the administrative hearing if the attorney chooses to appeal the case to this Court. Alabama Rules of Disciplinary Enforcement 18(g). Therefore, the two disciplinary rules enforced in this case do not amount to prior restraint.
In summary: 1) The petitioner was found to have been guilty of a misrepresentation, by clear and convincing evidence; 2) the two Disciplinary Rules, under our construction, are not unconstitutionally vague or overbroad; 3) there was no prior restraint; and 4) there was clear and convincing evidence that the appellant made the misrepresentation with actual knowledge of its falsity.
AFFIRMED.
*154 TORBERT, C.J., and JONES, ALMON, SHORES and BEATTY, JJ., concur.
MADDOX and HOUSTON, JJ., dissent.
ADAMS, J., recused.
MADDOX, Justice (dissenting).
This case presents a very interesting question: Can the Alabama State Bar discipline a lawyer, who is a candidate for a judgeship, for making a misrepresentation on his campaign material? I do not believe that the State Bar had the authority to try this case; therefore, I must respectfully dissent.
I believe that all candidates for judgeships, including incumbent judges, are subject to the Canons of Judicial Ethics, and that jurisdiction to try breaches by a candidate of any provisions of the Canons is in the Judicial Inquiry Commission and the Court of the Judiciary, or the Supreme Court of Alabama, depending upon whether the candidate is a judge or a lawyer, respectively.[1]
In my judgment, Canon 7, Canons of Judicial Ethics, is the sole method for disciplining Dowling under the facts of this case. Canon 7 reads as follows:
"A. Political conduct in general:
"(1) A judge or a candidate for election to a judicial office should endeavor at all times to refrain from political activities inappropriate to the judicial office that he holds or seeks. It is desirable that a judge or a candidate for election to judicial office endeavor not to be involved in the internal workings of political organizations, engage in campaign activities in connection with a political candidate other than candidates for judicial offices and not be involved in political fund solicitations other than for himself. However, so long as judges are subject to nomination and election as candidates of a political party, it is realized that a judge or a candidate for election to a judicial office cannot divorce himself completely from political organizations and campaign activities which, indirectly or directly, may be involved in his election or re-election. Nevertheless, should a judge or a candidate for a judicial position be directly or indirectly involved in the internal workings or campaign activities of a political organization, it is imperative that he conduct himself in a manner at all times to prevent any political considerations, entanglements or influences from ever becoming involved in or from ever appearing to be involved in any judicial decision or in the judicial process.
"(2) A judge should resign his office when he becomes a candidate either in a political primary or in a general election for a nonjudicial office, except that he may continue to hold his judicial office while being a candidate for election to a state constitutional convention or commission.
"(3) A judge may engage in political activity on behalf of measures to improve the law, the legal system or the administration of justice.
"B. Campaign conduct:
"(1) A candidate, including an incumbent judge, for a judicial office that is filled either by public election between competing candidates or on the basis of a merit system election:
"(a) Should maintain the dignity appropriate to judicial office.
"(b) Should prohibit public officials or employees subject to his direction or control from doing for him what he is prohibited from doing under this canon.
"(c) Should not make pledges or promises of conduct in office other than the faithful and impartial performances of the duties of the office, should not announce in advance his conclusions of law on pending litigation; and should not misrepresent his identity, qualifications, present position or other fact.
"(d) Should not use or permit the use of campaign contributions for the private benefit of himself.

*155 "C. A candidate for any judicial office not subject to the jurisdiction of the judicial inquiry commission or the court of the judiciary who breaches any applicable mandatory provision of these canons should be subject to the original jurisdiction of the supreme court of Alabama." (Emphasis added.)
While I agree that a lawyer disciplinary agency can be given jurisdiction over a lawyer for conduct that occurs during a campaign for a judgeship, Alabama has not seen fit to follow this procedure, but, in fact, has reserved to this Court the power to discipline "candidate[s] for any judicial office not subject to the jurisdiction of the judicial inquiry commission or the court of the judiciary." Canon 7C., Canons of Judicial Ethics.
It is interesting to note that, in this case, the record shows that the bar committee that first examined the complaint against Dowling was of the same opinion as I am. The "Report of Completed Investigation and Recommendation" of the Houston County Bar Association, where the complaint originated, was that the complaint be dismissed as not within its jurisdiction. The General Counsel of the Bar, however, in a memorandum to the Alabama State Bar Disciplinary Commission, stated that "[He saw] no reason why the Alabama State Bar [did] not have jurisdiction to discipline Brian W. Dowling if he [was] guilty of a violation of the Code of Professional Responsibility."
The General Counsel, in his brief to the Disciplinary Commission, was of the opinion that this Court's case of Alabama State Bar v. Moore, 282 Ala. 562, 213 So.2d 404 (1968), did not apply, with which I agree, but he concluded with the following statement, with which I do disagree:
"Although the Alabama Canons of Judicial Ethics contains a statement concerning candidates for election to judicial office, the Canons do not state that the Alabama State Bar does not have jurisdiction to discipline a candidate for judicial office if he, indeed, has violated some provision of the Code of Professional Responsibility of the Alabama State [Bar]. As a matter of fact, by letter dated June 3, 1986, to the Honorable C.C. Torbert, Chief Justice, the Chairman of the Judicial Inquiry Commission, Kenneth F. Ingram, stated that the Judicial Inquiry Commission had denied jurisdiction and had stated that the jurisdiction of the Supreme Court would apply, and of course, the local grievance committees and the Disciplinary Commission act as [an] arm of the Supreme Court.
"By disciplining Brian W. Dowling by any type of the defined disciplines would in no way remove him from office nor would it remove him as a candidate for a judicial office although any type of public discipline would perhaps adversely reflect upon his candidacy.[2]
"In conclusion, I do not understand the rationale of the Houston County Grievance Committee in denying jurisdiction. Canon 7A.(1) contains the following:
"* * *
"Although this Canon may vest the Judicial Inquiry Commission, [or] the Court of the Judiciary [with authority to] take action against the candidate for judicial office for certain prohibited activities, I do not view the Canon as divesting the Alabama State Bar of jurisdiction over a candidate for judicial office if he has, in fact, violated some provision of the Code of Professional Responsibility of the Alabama State Bar."
The problem with the General Counsel's conclusion is that this Court has not granted to the Bar the power to hear cases involving violations of the Canons of Judicial Ethics. I agree that a lawyer could be guilty of violating some disciplinary rule, and if he could no longer practice law, he could not be a candidate for a judgeship because judges "shall be licensed to practice law." Amendment 328, § 6.07, Constitution of Alabama, 1901.
*156 Although we have no Alabama cases construing our Canons of Judicial Ethics on the question presented, I am of the opinion that the Judicial Inquiry Commission and the Court of the Judiciary have jurisdiction of complaints against incumbent judges who are candidates for a judgeship and that this Court has jurisdiction of candidates who are "not subject to the jurisdiction of the judicial inquiry commission or the court of the judiciary." Canon 7C.
My research has turned up only two cases from other states in which a lawyer was disciplined for conduct that occurred while he was a candidate for judicial office. In each case, the Canons of Judicial Ethics were applied. In one case, the lawyer was tried in an original proceeding before the Kansas Supreme Court, and in the other he was tried by the state disciplinary commission, because that state had a specific provision in its Code of Professional Responsibility that authorized the disciplinary commission to proceed against the lawyer/candidate. We have no such rule.[3]
In In re Baker, 218 Kan. 209, 542 P.2d 701 (1975), the Supreme Court of Kansas, in an original proceeding, held that certain pledges that the candidate would be a full-time judge, would work hard to earn his pay, would pay prompt attention to the people's business and would be considerate of the time of jurors and litigants, were within the purview of the Code of Judicial Conduct of that state, which prohibited a candidate for judicial office from making pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office.
In Baker, the Supreme Court of Kansas had original jurisdiction of the proceeding pursuant to a provision of the Kansas Constitution, but had, by rule, created a Commission on Judicial Qualifications to assist it in carrying out its constitutional responsibilities. Canon 7 of the Kansas Code of Judicial Conduct was substantially similar to our own. It provided, in part:
"B. Campaign Conduct.
"(1) A candidate ... for a judicial office that is filled either by public election between competing candidates or on the basis of a merit system election:
"(a) should maintain the dignity appropriate to judicial office ...;
"(b) should prohibit public officials or employees subject to his direction or control from doing for him what he is prohibited from doing under this Canon; and except to the extent authorized under subsection B(2) or B(3), he should not allow any other person to do for him what he is prohibited from doing under this Canon;
"(c) should not make pledges or promise of conduct in office other than the faithful and impartial performance of the duties of the office; or mispresent [sic] his identity, qualifications, present position, or other fact; or announce his views on disputed legal or political issues, except that he may answer allegations directed against his record in office."
As stated earlier, this Court has not adopted a Rule that grants to the Alabama State Bar the authority to assist this Court with complaints involving candidates who are "not subject to the jurisdiction of the judicial inquiry commission or the court of the judiciary," and, because of that fact, I believe that if Dowling is to be disciplined for the conduct made the subject of this particular complaint, then the disciplinary proceeding is within the original jurisdiction of this Court, as Canon 7 specifically provides, not in the Alabama State Bar.
In Matter of Riley, 142 Ariz. 604, 691 P.2d 695 (1984), the other case my research revealed, a lawyer was disciplined by the state bar, even though he had won the election and was a superior judge at the time of the discipline, but in that case, unlike the Kansas case, the Disciplinary Rules of the Bar specifically provided, in DR 8-103, as follows:
"(A) A lawyer who is a candidate for judicial office shall comply with the applicable *157 provisions of Canon 7 of the Code of Judicial Conduct."
As I have already pointed out, we have no similar provision in our Code of Professional Responsibility. Alabama's Canons of Judicial Ethics, of course, follow substantially the Code of Judicial Conduct of the American Bar Association, but Canon 7 of that model Code does not specify which court or body has jurisdiction of complaints against candidates for judicial office. Alabama's Canon 7 does. Alabama chose to vest jurisdiction as follows:
"C. A candidate for any judicial office not subject to the jurisdiction of the judicial inquiry commission or the court of the judiciary who breaches any applicable mandatory provision of these canons shall be subject to the original jurisdiction of the supreme court of Alabama."
Canon 7C.
It is interesting to note that Bar Exhibit 1, "a note and a campaign card attached to an envelope addressed to the Judicial Inquiry Commission," was sent to the Chief Justice of this Court by Judicial Inquiry Commission Chairman Kenneth F. Ingram, with a notation that it seemed to be within the jurisdiction of the Supreme Court. The Chief Justice forwarded the complaint to the Bar. I believe the matter should properly have been submitted to this Court, which could have designated the Alabama State Bar to determine whether there was a breach of "any applicable mandatory provision" of the Canons of Judicial Ethics.
Since the adoption of Canon 7, this Court has not had an occasion to hear a complaint filed against a candidate for a judicial office, but I am of the opinion that this Court, under the provisions of Canon 7, is the body that has "original jurisdiction" of such complaints involving candidates "not subject to the jurisdiction of the judicial inquiry commission or the court of the judiciary." I recognize that there could be instances where a lawyer could be disciplined for misconduct in his professional or private capacity by the Alabama State Bar, and this could adversely affect his right to be a candidate for judicial office, but if the alleged misconduct is a violation of Canon 7, which governs candidates for judicial office, as this alleged misconduct is, then Canon 7C. specifically applies. I must dissent.
NOTES
[1] Dowling's motion for a directed verdict filed with the Disciplinary Commission of the Alabama State Bar, in my opinion, sufficiently raised the jurisdictional question.
[2] I totally disagree with this legal conclusion by the learned General Counsel. If Dowling's license was lifted, he could not become a judge.
[3] When the oral arguments were heard on the adoption of Canon 7 by this court in 1975, Robert F. Leflar suggested the need for a disciplinary rule to cover lawyer/candidates. We never adopted one.