1998 OK 120

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Lee STILWELL, Respondent.**

**SCBD No. 4314**

Supreme Court of Oklahoma.

Dec. 8, 1998.

As Corrected on Denial of Rehearing March 8, 1999.

Allen J. Welch, Oklahoma Bar Association, Oklahoma City, Oklahoma, Attorney for Complainant.

Jack Mattingly, Mattingly & Snow, Seminole, Oklahoma, Attorney for Respondent.

WATT, J.

¶ 1 This matter is here for consideration of a report of a Trial Panel of the Professional Responsibility Tribunal recommending that the complaint against Respondent, Lee Stilwell, be dismissed and he be relieved of any obligation to pay costs. Respondent is currently Associate District Judge in Seminole County, Oklahoma. The Oklahoma Bar Association filed a complaint against Judge Stilwell for conduct that occurred in 1980, while Judge Stilwell was in private practice in Hughes County. The Bar's complaint alleged that Judge Stilwell had violated the following Rules Governing Disciplinary Procedure: 1.1 (failure of competence), 1.3 (failure of diligence), 4.2 (improperly causing another to contact a person he knew to be represented by counsel), 8.4(c) (conduct involving fraud, dishonesty, or deceit), and 8.4(d) (conduct prejudicial to the administration of justice). The Bar subsequently withdrew its competence and diligence claims (Rules 1.1 and 1.3). In its brief the Bar withdrew its claim that Judge Stilwell violated Rule 8.4(c). Thus, the only issues remaining for determination are whether Judge Stilwell violated either Rule 4.2 or Rule 8.4(d). We hold that Judge Stilwell did not violate either rule.

## FACTS

¶ 2 In 1980 Benjamin Clayton retained Judge Stilwell, who was then in private practice, to represent Clayton in a divorce action against his wife, Patricia Lynn Clayton. Mrs. Clayton testified that she accompanied Mr. Clayton to the appointment Mr. Clayton had made with Judge Stilwell and that she was "just going to sign" the waiver for the divorce. Mrs. Clayton had agreed to the terms of the divorce and paid $230 to Judge Stilwell on behalf of Mr. Clayton, which she had to borrow from her mother, because neither she nor her husband had the money to pay Judge Stilwell's fee. The Trial Panel found that Mrs. Clayton was not represented by Judge Stilwell. At the hearing Mrs. Clayton was asked, "And your, opinion, then, back in 1980, did you ever establish an attorney-client relationship with Mr. Stilwell?" Mrs. Clayton answered, "No sir." The Bar resists the Trial Panel's finding on this score but our independent review of the transcript of the hearing before the Trial Panel convinces us that the Trial Panel's finding that Judge Stilwell represented only Mr. Clayton, and not Mrs. Clayton, was correct.

¶ 3 Mrs. Clayton testified that she thought she was divorced after she signed the waiver and gave it to Judge Stilwell. The fact was, however, that Mr. Clayton's petition for divorce was never filed. Mr. and Mrs. Clayton both remarried. In 1983 Mrs. Clayton married a Mr. Smith, who is both an oil company employee and a minister, and they have had two children. They live in Payne County.

¶ 4 Sometime in 1996, Mrs. Smith sought a copy of her decree of divorce from Mr. Clayton because she needed it in order to qualify for mission work in her church. She was advised by the Hughes County Court Clerk that no decree granting her a divorce was on file in Hughes County. Mrs. Smith then called Judge Stilwell and informed him of her problem. Judge Stilwell promised to check to see if he still had the old file. Judge Stilwell found the file and told Mrs. Smith that the petition for divorce had never been filed.

¶ 5 Before she contacted Judge Stilwell, Mrs. Smith had discussed her problem with a Payne County lawyer, William Boyce, who said that he would require a $500 retainer to secure a divorce for her. Mrs. Smith then called on Judge Stilwell and asked him to pay for her divorce, which he declined to do because he had children in college. Mrs. Smith testified that Judge Stilwell apologized on several occasions for her plight. Judge Stilwell explained that the probable reason the divorce petition was never filed was that it was inadvertently packed away when he moved his office from Wetumka to Holdenville. The record is undisputed that Judge Stilwell was completely honest with Mrs. Smith, never attempted to shift the blame for his failure to file the divorce action to anyone else, and made no attempt to give Mrs. Smith any legal advice.

¶ 6 In a meeting with Mrs. Smith at the Seminole County courthouse, Judge Stilwell told Mrs. Smith that a lawyer, George Butner, whose office was across the street from the courthouse, might be able to advise Mrs. Smith. Mrs. Smith did see Mr. Butner. She testified that she did so because she thought "it would be easier" if Butner handled the divorce. Nevertheless, when Mrs. Smith saw Butner she did not ask him to handle the divorce for her. Butner did, however, ask Judge Stilwell to return the $230, originally advanced by Mrs. Smith's mother in 1980. Judge Stilwell then refunded the $230 fee.

## DISCUSSION

¶ 7 The Trial Panel found that there was no clear and convincing evidence to support a finding that Judge Stilwell had violated Rule 4.2, Oklahoma Rules of Professional Conduct.[1] The Trial Panel so concluded, correctly we believe, because the evidence showed that Mrs. Smith decided to

contact Butner for her own purposes. Further it is undisputed that Mrs. Smith had not paid the $500 required by Boyce at the time Mrs. Smith met with Judge Stilwell. Thus, neither Judge Stilwell nor Butner knew or had reason to know that Mrs. Smith was represented by Boyce when Judge Stilwell recommended to Mrs. Smith that she see Butner. In Bar disciplinary proceedings, this Court exercises exclusive original jurisdiction as a licensing court, and the ultimate responsibility for deciding whether misconduct has occurred rests with this Court. *State ex rel. Oklahoma Bar Ass'n. v. Gasaway*, 1991 OK 33, 810 P.2d 826. "Before we may impose discipline upon an attorney, the charges must be established by clear and convincing evidence." 1991 OK 33 at ¶ 9, 810 P.2d 826. As the charge that Judge Stilwell violated Rule 4.2 was not proved by clear and convincing evidence, we hold that it should be dismissed.

¶ 8 We reject the Bar's contention that Mrs. Smith's statement to Judge Stilwell that she "had" an attorney established that she was, as a matter of law, represented by counsel. As the Trial Panel concluded, Mrs. Smith's statement to Judge Stilwell that Boyce required a $500 retainer supported the inference drawn by Judge Stilwell from Mrs. Smith's statement that she had not yet retained Boyce as her lawyer. The correctness of this conclusion is made clear if one asks one's self, "What obligation did Boyce have toward Mrs. Smith before she paid him the $500 retainer he required?" The answer is, clearly, "None."

¶ 9 The Trial Panel also concluded that the evidence did not support a finding that Rule 8.4(c) and (d) had been violated.[2] The Trial Panel found that there was no evidence in the record to support a finding that Judge Stilwell's conduct was either dishonest,

---

1. Rule 4.2 provides:
   Communication With Person Represented By Counsel
   In representing a client a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

2. Rule 8.4(c) and (d) provide:
   It is professional misconduct for a lawyer to:
   . . .
   (c) engage in conduct involving dishonesty fraud deceit or misrepresentation;
   (d) engage in conduct that is prejudicial to the administration of justice;
   . . .

fraudulent, or prejudicial to the administration of justice. Everything that Judge Stilwell told Mrs. Smith was truthful, and Mrs. Smith conceded that he was open and honest with her.

¶ 10 The Bar candidly admits that the Trial Panel correctly found that Rule 8.4(c) was not violated. The Bar claims, however, that Judge Stilwell violated Rules 4.2 and 8.4(d). The Bar contends that the record shows that Mrs. Smith was represented by Boyce and had interests that were "potentially distinct" from Judge Stilwell's. The Bar claims that Mrs. Smith had a potential malpractice claim against Judge Stilwell and that he feared she would complain to the Bar or to the Council of Judicial complaints. Thus, claims the Bar, Judge Stilwell violated both Rule 4.2 and Rule 8.4(d) because violation of rule 4.2 constitutes conduct prejudicial to the administration of justice.

¶ 11 We reject the Bar's contention for two reasons. First, the record does not support the Bar's claim that Judge Stilwell knew or should have known Mrs. Smith was represented by counsel. Second, the record fails to support the Bar's contention that Judge Stilwell had anything to fear from a malpractice claim by Mrs. Smith or from complaints by her to the Oklahoma Bar Association or the Council on Judicial Complaints.

¶ 12 At the hearing Judge Stilwell testified that he "never considered [a malpractice claim by Mrs. Smith] as a possibility," and "I really don't think I considered that." With respect to the danger of a Bar complaint, Judge Stilwell testified, "I didn't consider that." When asked if he was worried about a Judicial complaint Judge Stilwell testified, "Again, I never considered it." The Bar's claim that Judge Stilwell was concerned about a malpractice claim, or a Bar or Judicial complaint is not supported by the testimony in the record.

¶ 13 The Bar claims that this case should be governed by *State ex rel. Oklahoma Bar Ass'n. v. Eakin,* 1995 OK 106, 914 P.2d 644. In *Eakin,* we disciplined a judge under Rule 8.4(c) and (d) based on a pattern of ex parte communication with a party to a proceeding which was pending before his court. There is no similar conduct here. Smith was not a

party to any legal proceeding and his communication with her was not improper.

¶ 14 The Bar's sole basis for its claim that Judge Stilwell violated Rule 8.4(d) is its contention that he violated Rule 4.2. Judge Stilwell had no attorney-client relationship with Mrs. Smith, and there is no reason to disbelieve his undisputed testimony that his actions were not motivated by concerns that Mrs. Smith might assert a malpractice claim or a complaint to the Bar or the Council on Judicial Complaints. Thus there is no basis for holding that Judge Stilwell violated Rule 4.2. By the Bar's own theory, its claim that Judge Stilwell violated Rule 8.4(d) fails because its claim that he violated Rule 4.2 fails.

¶ 15 We fail to understand the dissents position that Judge Stilwell owed Mrs. Clayton Smith a duty despite the facts that (1) the record establishes that Judge Stilwell did not represent her and (2) Judge Stilwell represented Mr. Clayton, who had a potentially adversarial relationship with his wife. We share the dissent's apparent sympathy for Mrs. Smith. Nevertheless, we may not use our sympathy as an excuse to impose discipline where none is warranted.

¶ 16 The Bar has also applied for assessment of costs in this matter. Because of our dismissal of the matter, and the Trial Panel's recommendation that no costs be assessed, the Bar's application for costs is denied.

COMPLAINT DISMISSED; APPLICATION FOR ASSESSMENT OF COSTS DENIED.

SUMMERS, V.C.J., and HODGES, J., STUBBLEFIELD and TAYLOR, S.JJ. (In Lieu of HARGRAVE and ALMA WILSON, JJ. Who Certified their Disqualification)—concur.

KAUGER, C.J., LAVENDER, SIMMS, and OPALA, JJ.—concur in part, dissent in part.

¶ 1 KAUGER, C.J. concurring in part and dissenting in part with whom LAVENDER, SIMMS and OPALA, JJ. join:

¶ 2 My concern with the majority opinion is its over-broadness—read literally, the

opinion stands for the proposition that there must be privity of contract before the filing of a complaint will lead to the imposition of discipline.

¶3 The pivotal point in the majority opinion is the lack of an attorney-client relationship between the complaining party [wife] and the respondent, Lee Stilwell [Stilwell].[1] A literal reading of the majority opinion indicates that privity of contract must exist between the attorney and the complainant before discipline will result—a position contrary to Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A,[2] Oklahoma case law,[3] and extant jurisprudence.[4]

1.  Paragraph 2 of the majority opinion provides in pertinent part:
    "... The Trial Panel found that Mrs. Clayton was not represented by Judge Stilwell. At the hearing Mrs. Clayton was asked, 'And your, opinion, then, back in 1980, did you ever establish an attorney-client relationship with Mr. Stilwell?' Mrs. Clayton answered, 'No sir.' The Bar resists the Trial Panel's finding on this score but our independent review of the transcript of the hearing before the Trial Panel convinces us that the Trial Panel's finding that Judge Stilwell represented only Mr. Clayton, and not Mrs. Clayton, was correct."

2.  Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides:
    "The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline."

3.  *State ex rel. Oklahoma Bar Ass'n v. Flanery,* 1993 OK 97, 863 P.2d 1146, 1150 [Recognizing that there had been no lawyer-client relationship between the attorney and the injured parties and that all the conduct complained of occurred before the attorney was licensed, the attorney was disbarred for embezzlement of funds from family members.]; *State ex rel. Oklahoma Bar Ass'n v. Raskin,* 1982 OK 39, 642 P.2d 262, 265 [Recognizing that procedures against a dishonest lawyer need not rest upon the injured party's complaint and that jurisdiction lies even in causes where the complaint did not originate with the client of the accused attorney.]; *State ex rel. Oklahoma Bar Ass'n v. Brandon,* 1969 OK 28, 450 P.2d 824, 827 [Conduct occurring before the individual became an attorney—and in which there was no attorney-client relationship—was sufficient to suspend the attorney under disciplinary rules substantially similar to Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, see note 2, supra.]. See also, *Bradford Securities Processing Serv., Inc. v. Plaza Bank & Trust,* 1982 OK 96, 653 P.2d 188, 190 [Whenever circumstances attending situation are such that ordinarily prudent person could reasonably apprehend that, as a natural and probable consequence of his act, another person will be in danger of receiving injury, duty to exercise ordinary care to prevent such injury arises.]. *Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931) was cited in *Bradford.* In so doing, the Court stated:

    "... Having determined that privity has no applicability under the law of Oklahoma in the realm of tort, we hold that while the apprehensions expressed in *Ultramares* may or may not be a telling argument as to whether the harm to a particular plaintiff was foreseeable to the defendant, their significance is relegated to foreseeability as it relates to proximate cause and must be considered only in that light...."
    Under the standards announced in *Bradford,* the respondent knew or should have known that leaving the case in limbo was likely to leave the wife's status in an uncertain condition and created the likelihood of a bigamous alliance.

4.  Discipline was imposed in the following cases despite the lack of an attorney-client relationship. *Florida Bar v. Schultz,* 712 So.2d 386, 388 (1998) [Attorneys may be disciplined for failing to disclose essential matters in business transactions with nonclients where there is no attorney-client relationship.]; *Florida Bar v. Calvo,* 630 So.2d 548, 549 (Fla.1994) [Attorneys may not be excused from failing to honor obligations to the public at large.]; *Louisiana State Bar Ass'n v. Perez,* 550 So.2d 188, 190 (La.1989) [Although the case did not involve the attorney-client relationship, attorney was disbarred for withdrawing funds from an account he had been appointed to inventory as a notary public.]; Matter of *Grimble,* 157 Ariz. 448, 759 P.2d 594, 598 [The lack of an attorney-client relationship will not excuse an attorney from discipline.]; *Dowling v. Alabama State Bar,* 539 So.2d 149, 153 (Ala.1988), *cert. denied,* 490 U.S. 1081, 109 S.Ct. 2102, 104 L.Ed.2d 663 (1988) [Public censure of an attorney for distributing misleading campaign materials upheld. The complaint did not come from a client of the attorney but was filed anonymously.]; Matter of *Kersting,* 151 Ariz. 171, 726 P.2d 587, 591 (1986) [Finding that a lawyer may vio-

late his ethical obligations even though there is no breach of contract and that rules of ethical conduct do not apply only in the attorney-client relationship.]; *Grievance Administrator v. Nick-* *els,* 422 Mich. 254, 373 N.W.2d 528 (1985) [Attorneys may be disciplined for activities unrelated to the practice of law and arising outside the attorney-client relationship.].