DECISION AND JUDGMENT ENTRY
{¶ 1} Elsebeth Baumgartner appeals her conviction for falsification, a violation of R.C. 2921.13, from the Ottawa County Municipal Court. Because we conclude that Baumgartner's assignments of error are not well-taken, we affirm the conviction of the Ottawa County Municipal Court.
 Facts {¶ 2} This appeal stems from statements Baumgartner made at a meeting of the Port Clinton City Council on January 2, 2002, which was in special session to discuss whether the Island Boat Line should be awarded the contract to use the Jefferson Street Pier. This pier is owned by the city of Port Clinton, and the city council wanted to get public input before entering the contract. A vote on the issue was scheduled for a later meeting.
 {¶ 3} When Baumgartner rose to speak she made the following statements: "I would like to speak. I'm Elsebeth Baumgartner. I'm a resident of Oak Harbor, Ohio, but I represent Darlene Matthes who is a resident of Port Clinton. I'm here on her behalf as well as another citizen from Erie County, Krista Harris, who I also represent in regards to a pending request for the Bureau of Criminal Investigations in regards to Kevin Baxter.
 {¶ 4} "The significance of investigating Kevin Baxter is he is an Erie County prosecutor and he is a principal investor in the Island Boat Lines. He is presently under investigation by the Bureau of Criminal Investigation for his involvement in cocaine trafficking as well as suborning perjury in a drug-related matter in Erie County.
 {¶ 5} "We've also requested an investigation into the coverup, what we believe to be the coverup, of the murder of Susan Matthes's wife — or I'm sorry — mother, Darlene Matthes, which occurred on April 10, 1998 in Erie County. I would strongly urge this Council not to proceed with any agreement with the Island Boat Line, as other principals within this boat line are also — I also have affidavits that they are involved in cocaine.
 {¶ 6} "The entire organization, I believe, is corrupt enterprise, and should be duly investigated as such. Thank you.
 {¶ 7} "I have affidavits from some of my citizens with me."
 {¶ 8} Later in the hearing, after Brett Kinzel of the Island Boat Line responded to Baumgartner's allegations, Baumgartner made further statements: "I'd like Mr. Kinzel — he made some serious accusations, but he didn't want — he doesn't want to put them in writing apparently." To this the President of the Port Clinton City Council responded, "I don't want to get into this character thing back and forth." At which point, Baumgartner stated, "No. But I would just like it known he called people who signed sworn affidavits embezzlers, murderers, and thieves, is what he stated. And I would just like it stated that everybody I have is willing to submit to a polygraph exam voluntarily if the principals of this company would be willing to do the same and submit to hair analysis to disprove once and for all to the Community of Sandusky that they are not involved in drug activity and I'll be quiet."
 {¶ 9} These allegations resulted in Baumgartner being charged with and later convicted of falsification, a violation of R.C.2921.13[1] — a misdemeanor of the first degree. At trial, many individuals testified as to the falsity of Baumgartner's allegations. A number of the "principals" from the Island Boat Line testified that they had never used drugs, and they had been subjected to random urinalysis by the United States Coast Guard. The chief investigator of the Darlene Matthes suicide also testified and stated that the Erie County Prosecutor, Kevin Baxter, had no role in determining the death was a suicide. Baumgartner now appeals her conviction from the Ottawa County Municipal Court.
 Assignments of Error {¶ 10} "I. The trial court erred in denying defendant's motion for acquittal because the weight of reliable and probative evidence did not support a finding of guilt beyond a reasonable doubt as a matter of law.
 {¶ 11} "II. The trial court committed reversible error in failing to exclude irrelevant and prejudicial testimony and in failing to admit relevant and probative testimony, the admission or exclusion of which would have altered the trier of facts' verdict.
 {¶ 12} "III. The trial court committed reversible error when it decided prior to trial that the defendant would be precluded from introducing character witnesses.
 {¶ 13} "IV. Defendant suffered ineffective assistance of counsel when counsel failed to consistently object to the prosecutor's improper statements and irrelevant and/or prejudicial lines of questioning.
 {¶ 14} "V. The trial court erred as a matter of law when it failed to find that defendant's statements to the Port Clinton Council were absolutely privileged and/or that defendant's prosecution was a violation of the defendant's right to free speech and other constitutional rights."
 {¶ 15} Because the critical assignment of error in Baumgartner's appeal is found in the fifth assignment of error, we will address it at the outset. The remaining assignments will be addressed in the order in which they were argued.
 Fifth Assignment of Error {¶ 16} The fifth assignment of error raised by Baumgartner argues two issues: "Defendant-appellant's first amendment constitutional right of free speech was violated by her prosecution" and "Defendant-appellant was wrongfully charged and convicted of falsification because the statements which she made at the Port Clinton City Council meeting were based on sworn information provided to her in the course of and in furtherance of her representation of clients and either a qualified or an absolute privilege should have attached, protecting her from prosecution."
 {¶ 17} Baumgartner's first argument in her fifth assignment of error concerns the relationship between the right to free speech and making false statements. To start, this court has stated before that R.C. 2921.13 is constitutional; in fact, we have found that "R.C. 2921.13(A)(3), which punishes those who knowingly make a false statement, does not have a `chilling effect' on the First Amendment * * *." Toledo v. Hossieni (Mar. 31, 1987), Lucas App. No. L-86-130. We find the same holds true for R.C. 2921.13(A)(1) and the other subsections as well.
 {¶ 18} The centerpiece of Baumgartner's argument is that her comments were protected speech under the holding of the United States Supreme Court case of Garrison v. Louisiana (1964),379 U.S. 64; however, she is mistaken. Garrison concerned a conviction under Louisiana's criminal defamation statute for comments made about a public official and why that speech should not have been punished. Specifically, the Louisiana law was unconstitutional because it allowed for the punishment of individuals who made defamatory statements that were not false. Id., at 73, 77-79. It should be noted, however, that unlike the Louisiana statute, Ohio's falsification statute, R.C. 2921.13, expressly punishes false statements. Ohio's statute, therefore, does not run afoul of the United States Constitution, like Louisiana's statute did.
 {¶ 19} But this does not mean that the Garrison case is of no worth here, for it sets forth concepts that are helpful to understanding this matter. Garrison stresses that not all speech is protected under the First Amendment. "Although honest utterance, even if inaccurate, may further the fruitful exercise of the right to free speech, it does not follow that the lie, knowingly and deliberately published about a public official, should enjoy a like immunity. * * * That speech is used as a tool for political ends does not automatically bring it under the protective mantle of the Constitution. * * * Hence the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection."Garrison v. Louisiana (1964), 379 U.S. 64, 75. In fact, by finding in that way, the high court expressly applied the civil standard for defamation from New York Times v. Sullivan (1964),376 U.S. 254, 279-280, to criminal defamation cases. Id., at 74.
 {¶ 20} Later, in St. Amant v. Thompson (1968),390 U.S. 727, 731, the United States Supreme Court further explained that standard: "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." However, the court also ruled that the defendant merely testifying that he or she believed that the statements were true is not enough; the factfinder must determine that the statements were actually made in good faith. Id., at 732.
 {¶ 21} The Ohio Supreme Court has employed similar analysis.McKimm v. Ohio Elections Comm. (2000), 89 Ohio St.3d 139, 147;Perez v. Scripps-Howard Broadcasting Co. (1988),35 Ohio St.3d 215, 218. And it has further stated that "attorneys may not invoke the federal constitutional right to free speech to immunize themselves * * *." Disciplinary Counsel v. Gardner,99 Ohio St.3d 416, 2003-Ohio-4048, at ¶ 15. Other courts, moreover, have specified why statements made by attorneys have a unique place in reviewing charges of this nature. "An attorney who makes critical statements regarding judges and legal officers with reckless disregard as to their truth or falsity . . . exhibits a lack of judgment that conflicts with his or her position as `an officer of the legal system and a public citizen having special responsibility for the quality of justice.' Minn. R. Prof. Conduct, Preamble." In the Matter of Westfall (Mo., 1991),808 S.W.2d 829, 837. See also, 35 Ohio Jurisprudence 3d (2002) 467, Defamation and Privacy, § 40 ("Any statement published of an attorney in respect of his or her profession is actionable if it tends to injure or disgrace the attorney as a member of the profession.").
 {¶ 22} The closest criminal cases in Ohio, however, that have dealt with this type of matter concerned a set of prosecutions under R.C. 3599.091, now R.C. 3517.02 — false statements made during a campaign. State v. Davis (1985), 27 Ohio App.3d 65,67; State v. Manfredi (May 17, 1985), Geauga App. No. 1166;State v. Gall (May 17, 1985), Geauga App. No. 1169. In Davis,
the conviction was affirmed because she knew that the statements in question were false. State v. Davis (1985),27 Ohio App.3d 65, 67. In Manfredi, the conviction was affirmed because, as the court stated, "[t]here is no evidence to show that appellant, Manfredi, knew [the statements] to be false. However, there is evidence to prove he acted in reckless disregard of the truth or falsity." State v. Manfredi (May 17, 1985), Geauga App. No. 1166. The conviction in Gall, however, was reversed because no evidence showed he knew that the statements in question were false or that he acted with reckless disregard of whether they were true or false. State v. Gall (May 17, 1985), Geauga App. No. 1169.
 {¶ 23} In this case, Baumgartner was charged with making false statements to the Port Clinton City Council concerning Kevin Baxter, the Erie County Prosecutor, and — it should be noted — other "principals" in the Island Boat Line, stating that they were "involved in cocaine." She also accused Baxter of covering-up a homicide and stated that he was being investigated by Ohio Bureau of Criminal Investigation. At trial, a number of witnesses testified as to why these statements were false. Different principals from the Island Boat Line recounted how they were not in any way involved with cocaine; in fact, testimony indicated that many of the principals were subjected to random urinalysis from the United States Coast Guard. Also testifying at trial was the lead investigator of the Darlene Matthes suicide, who stated that the Erie County Prosecutor, Kevin Baxter, did not have any role in determining that the death was a suicide. Additionally, no testimony was presented, save Baumgartner's bald assertions, that any witness had knowledge that Baxter was being investigated by the Ohio Bureau of Criminal Investigation.
 {¶ 24} Ultimately, the jury weighed the evidence presented to it and found that Baumgartner knowingly made false statements, as required for a conviction under the falsification statute. Therefore, the jury actually had to find a higher standard of intent to find her guilty of falsification than what would have been required in a civil or criminal defamation case concerning a public figure. It should be noted, moreover, that Kevin Baxter is the only principal in the Island Boat Line that was a public figure. The other principals, who had their reputations impugned by Baumgartner as well, were private citizens, and the strict test employed when viewing public figures for the purpose of a defamation case would not have applied to them.
 {¶ 25} As stated before, R.C. 2921.13 is constitutional, and a conviction under that statute does not impinge the speaker's right to free speech. Here, the jury found that Baumgartner knowingly made false statements and convicted her of falsification. That one of the individuals she made false statements about was a public figure, though the basis of Baumgartner's argument, does not affect the jury's outcome. We refuse to import defamation concepts into prosecutions for falsification and wholeheartedly endorse the idea that "attorneys may not invoke the federal constitutional right to free speech to immunize themselves [from prosecution]." Disciplinary Counsel v.Gardner, 99 Ohio St.3d 416, 2003-Ohio-4048, at 15. Therefore, her first argument fails.
 {¶ 26} Baumgartner's second argument in her fifth assignment of error concerns whether she had a privilege to make false statements because she claims she was acting as an attorney at the time. We find that argument wholly unconvincing.
 {¶ 27} As stated before, we refuse to extend defamation law concepts to prosecutions for falsification. However, we will address Baumgartner's argument to show why it fails.
 {¶ 28} The concept of an absolute privilege for lawyers comes from the idea that "[a]n attorney has an absolute immunity against libel and slander action for statements made representing a client in the course of litigation, either in the pleadings, briefs, or in oral statements to the judge and jury, so long as the defamatory matter may possibly bear some relation to the judicial proceeding." Simmons v. Climaco (1986),30 Ohio App.3d 225, 227. The privilege, in fact, may even attach before the lawsuit has been filed. Lang v. Trimble-Webber (Mar. 30, 2000), Cuyahoga App. No. 75692. But the privilege is limited and "applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered." 25 Restatement of the Law 2d, Torts (1977), § 586, Comment e. Accord, Krakora v. Gold (Sept. 28, 1999), Mahoning App. No. 98 CA 141.
 {¶ 29} Courts have further stated that "the privilege `does not give a person carte blanche to defame another on the mere condition that a judicial proceeding is mentioned in, or somehow connected to, the defamatory statement.' Extrajudicial communications, those statements not submitted as evidence, as a pleading, during oral argument or in any other court document, require closer examination. To come within the privilege, an extrajudicial communication must be: (1) made in the regular course of preparing for or conducting such a proceeding; (2) pertinent and material to the redress or relief sought; and, (3) published only to persons who are directly interested in the proceeding." Michaels v. Berliner (Feb. 7, 2001), Summit App. No. 20136, citing Michaels v. Berliner (1997),119 Ohio App.3d 82, 87-88. (Citations omitted.) It has been stated further that "[w]hile it has been said that the scope of the privilege for attorney communications embraces anything that possibly may be relevant to the proceedings involved and that the defense of privilege will be denied only if the communication clearly has no relation to the subject matter, it has been held that extrajudicial defamatory allegations of an attorney relating to a party's honesty are not sufficiently pertinent to judicial proceedings to clothe them with the absolute privilege when the only basis alleged for finding the allegations pertinent is that the defamed party's credibility was at issue." 50 American Jurisprudence 2d (2003), Libel and Slander § 310. In addition, we find that an absolute privilege does not apply to everybody that speaks in front of a local governing body. Conese v. Nichols
(1998), 131 Ohio App.3d 308, 318. Compare, Wexler v. JewishHosp. Assn. of Cincinnati (Oct. 26, 1983), Hamilton App. Nos. C-820654, C-820906.
 {¶ 30} The same holds true for a qualified privilege, which is considered to be synonymous with a conditional privilege. "A qualified privilege attaches where the publication is made in a reasonable manner and for a proper purpose. Implicit in this defense is a right and duty to speak, on matters of concern to a particular interested audience (which could be the general public), and a good faith in the publication. * * * `The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.'" Conese v. Nichols (1998), 131 Ohio App.3d 308,314-315, quoting Jacobs v. Frank (1991), 60 Ohio St.3d 111,114. Courts have also stated that "[a] qualified privilege may be lost if the person claiming the privilege made statements with actual malice." Krakora v. Gold (Sept. 28, 1999), Mahoning App. No. 98 CA 141. "In a qualified privilege case, `actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity."Jacobs v. Frank (1991), 60 Ohio St.3d 111, 116. This concept, as stated before, comes from the United States Supreme Court case of New York Times v. Sullivan (1964), 376 U.S. 254, 279-280.
 {¶ 31} The Ohio Supreme Court, furthermore, has explained the process that must be gone through when the defamatory statements are made in the context of a public hearing. A B-AbellElevator Co. v. Columbus/Cent. Ohio Bldg. Constr. TradesCouncil (1995), 73 Ohio St.3d 1, 7-13. It stated, "[o]ne type of interest protected by a qualified privilege is the public interest. The `public interest' privilege `involves communications made to those who may be expected to take official action of some kind for the protection of some interest of the public.' Prosser Keeton, The Law of Torts, supra, at 830, Section 115." Id., at 9. However, "[e]ven through the publication is privileged, a particular person cannot avail himself of the privilege if he abuses it. The privilege may be abused and its protection lost by the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter; by publication of the defamatory matter for some improper purpose; by excessive publication; or by publication of a defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged." 25 Restatement of the Law 2d, Torts (1977), § 598, Comment a. (Citations omitted.)
 {¶ 32} It, furthermore, stands to reason that "[i]f one publishes, with malicious motives, an untrue statement that is conditionally privileged, he or she is not exonerated from liability by the fact that he or she believed the statement to be true." 35 Ohio Jurisprudence 3d (2002) 508, Defamation and Privacy, § 77. A qualified privilege, therefore, may be defeated.Conese v. Nichols (1998), 131 Ohio App.3d 308, 313, fn. 2. See also, 35 Ohio Jurisprudence 3d (2002) 507, Defamation and Privacy, § 76.
 {¶ 33} Here, Baumgartner filed a motion in limine as to her qualified privilege to make false statements at the Port Clinton City Council meeting because it was a public hearing. This motion was denied before trial, not renewed at trial, and not argued on appeal; therefore, we will not review it now. As a result, we are left with the sole issue of whether Baumgartner had an absolute privilege to make false statements because she was a lawyer and allegedly representing clients at the time.
 {¶ 34} At the time of the false statements, no case was filed or about to be filed in any court. As Baumgartner herself stated at the Port Clinton City Council meeting, she merely represented Susan Matthes and Krista Harris concerning requests for investigations with the Ohio Bureau of Criminal Investigation as to Kevin Baxter's alleged cocaine trafficking, suborning perjury, and homicide cover-up. The protections afforded to lawyers who have a civil suit pending against them alleging defamation are not available when the lawyer is criminally charged with falsification. The only exception is when the statements are made in connection with a judicial proceeding during an ongoing criminal, civil, or administrative case where the lawyer is directly representing one of the parties. That did not occur in this case.
 {¶ 35} Even if the protections in defamation cases had applied, however, and we were willing to extend defamation law to cover the criminal offense of falsification, Baumgartner's claims would still fail. She was not preparing for a lawsuit where the defamatory statements were germane to the redress or relief she would have been seeking, and the statements were made to the public at large — which would have only had a fleeting interest in the matter she was addressing. Therefore, her second argument fails. Baumgartner's fifth assignment of error is found not well-taken.
 First Assignment of Error {¶ 36} The first assignment of error raised by Baumgartner argues one issue: "The trial court erred in denying defendant's Rule 29 motion for acquittal because the evidence presented was insufficient to sustain defendant's conviction on a charge of falsification." The standard to be applied when a Rule 29 motion for acquittal is made has been addressed many times by the Ohio Supreme Court. As early as 1967, the high court ruled in Statev. DeHass (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus: "On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." Later, inState v. Williams (1996), 74 Ohio St.3d 569, 576, the Ohio Supreme Court again directly applied this general concept to Rule 29: "With respect to appellant's argument that the trial court improperly rejected the Crim.R. 29 motion for acquittal, the `relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.' State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following
 {¶ 37} Jackson v. Virginia (1979), 443 U.S. 307." See also,State v. Bridgeman (1978), 55 Ohio St.2d 261, at the syllabus.
 {¶ 38} After reviewing the record in this case, we find that the above standard is more than adequately satisfied. But even that finding is unnecessary, for the record also reflects that Baumgartner did not renew her Rule 29 motion for acquittal at the end of her case; therefore, "any error which might have occurred in overruling the motion is waived." State v. Wohlgamuth, Wood App. No. WD-01-012, 2001-Ohio-3103, following State v.Whitmeyer (1984), 20 Ohio App.3d 279. Baumgartner's first assignment of error is found not well-taken.
 Second Assignment of Error {¶ 39} The second assignment of error raised by Baumgartner argues one issue: "The trial court erred in admitting testimony from prosecution witnesses that was irrelevant and collateral in nature to the elements of the charged crime, along with prosecutorial mischaracterizations, inferences and innuendoes relating to defendant's character and veracity, which were highly prejudicial to defendant."
 {¶ 40} In her brief, Baumgartner states that she highlights eleven instances where reversible error occurred through comments or questions made during her cross-examination. As Baumgartner points out, however, none of these comments or questions was objected to at trial. Therefore, error — if present at all — would be reviewed under the plain error standard. State v.Fenwick (Mar. 31, 2000), Erie App. No. E-98-031; State v.Barker, Lucas App. No. L-01-1290, 2002-Ohio-2801, at 24. Under Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed [by a court of appeals] although they were not brought to the attention of the [trial] court." There are three limitations on a reviewing court's decision to correct such an error, however: it must be a deviation from the legal rule, an "obvious" defect in the trial proceedings, and must have affected the outcome of the trial. State v. Noling, 98 Ohio St.3d 44,2002-Ohio-7044, at 62. Additionally, an appellate court reverses a conviction under the plain error doctrine "only in order to prevent a manifest miscarriage of justice." State v. Barker,
Lucas App. No. L-01-1290, 2002-Ohio-2801, at 24. This case does not fall into that category. Courts, in fact, have applied this standard to cases like the present one where questions or comments made by the prosecutor during cross-examination were not objected to by the defendant's trial counsel. State v. Kobelka,
Lorain App. No. 01CA007808, 2001-Ohio-1723; State v. Watson
(Apr. 12, 2001), Cuyahoga App. No. 77494.
 {¶ 41} Here, the comments and questions complained of by Baumgartner all occurred while she was being cross-examined. Each of the instances, in fact, allegedly concerned mischaracterizations of her testimony. For example, she complains about comments and questions by the prosecutor such as: "You accused him (Kevin Baxter) of covering it up"; "Your attack on Kevin Baxter was based on the word of a perjurer, is that correct"; or "Have you ever ran for county prosecutor in this county?" However, after reviewing the record, which placed the comments and questions in context, the prosecution was merely participating in proper cross-examination techniques. During his questioning of Baumgartner, the prosecutor did not deviate from a legal rule, his comments did not create an obvious defect in the trial proceeding, and his comments did not affect the outcome of the trial. Baumgartner's second assignment of error is found not well-taken.
 Third Assignment of Error {¶ 42} The third assignment of error raised by Baumgartner argues one issue: "The trial court erred in denying defendant the opportunity to present character witness' [sic] testimony when testimony relative to defendant's character was allowed to be admitted by the prosecution."
 {¶ 43} At trial, Baumgartner failed to renew her objection to the trial court not allowing her to call character witnesses or proffer the testimony of those character witnesses. Therefore, she waived her ability to argue that issue on appeal. State v.Lytle (Aug. 19, 1988), Highland App. No. 632. See also, Statev. Montgomery (June 8, 2000), Cuyahoga App. No. 76244. However, if she had objected to the trial court's decision to disallow character witnesses and proffered their character testimony, the exclusion of those witnesses would be reviewed under an abuse of discretion standard because the "admission or exclusion of evidence rests within the sound discretion of the trial court."Dayton v. Meyer (Mar. 29, 1991), Montgomery App. No. 11848.
 {¶ 44} "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, citing State v. Adams
(1980), 62 Ohio St.2d 151, 157. In order to show an abuse of discretion, "the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." Nakoff v. Fairview General Hospital (1996),75 Ohio St.3d 254, 256. In addition, "[t]he appellate court's review is even more limited than that of the trial court. While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that] of the * * * trial court. Instead, the appellate court must affirm the trial court's judgment." Pons v. Ohio State Medical Board.
(1993), 66 Ohio St.3d 619, 621.
 {¶ 45} Here, there was nothing in the record to indicate that the trial court abused its discretion in this case when it did not allow Baumgartner to call character witnesses. Therefore, even if she would have not waived the issue on appeal by objecting to their exclusion at trial and proffering their testimony, she still would have not prevailed on this argument. Baumgartner's third assignment of error is found not well taken.
 Fourth Assignment of Error {¶ 46} The fourth assignment of error raised by Baumgartner argues two issues: "Defendant was prejudiced by ineffective assistance of trial counsel, primarily by counsel's failure to object to the irrelevant, collateral, and prejudicial testimony and prejudicial prosecutorial comments" and "Defendant was prejudiced by ineffective
 {¶ 47} assistance of trial counsel resulting primarily from counsel's failure to effectively cross-examine prosecutorial witnesses."
 {¶ 48} The appellant bears the burden of proving that her counsel was ineffective since an attorney is presumed competent.Strickland v. Washington (1984), 466 U.S. 668, 687-689; Statev. Lott (1990), 51 Ohio St.3d 160,174. To meet this burden of proof, she must show that: (1) there was a substantial violation of the attorney's duty to his client, and (2) the defense was prejudiced by the attorney's actions or breach of duty.Strickland, supra.; State v. Smith (1985), 17 Ohio St.3d 98,100. Prejudice is shown where there is a reasonable probability that a different result would have occurred in the case if the attorney had not erred. State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of syllabus; State v. Noling,98 Ohio St.3d 44, 2002-Ohio-7044, at 108.
 {¶ 49} In discussing the issue of attorney competence, the Ohio Supreme Court observed: "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citations omitted] * * * Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' [Citations omitted]" State v. Frazier (1991),61 Ohio St.3d 247, 253.
 {¶ 50} This presumption means that a great amount of deference must be given to counsel's trial strategy. State v.Carter (1995), 72 Ohio St.3d 545, 558. We are not to second-guess. Even a questionable trial strategy does not compel a finding of ineffective assistance of counsel. State v. Smith
(2000), 89 Ohio St.3d 323, 328; State v. Clayton (1980),62 Ohio St.2d 45, 49.
 {¶ 51} As to Baumgartner's first argument in her fourth assignment of error, since we found her second assignment of error not well-taken because the prosecutor's actions were not improper, her trial counsel's failure to object to alleged misconduct was not improper. State v. Darden, 6th Dist. No. E-01-047, 2002-Ohio-6184, at ¶ 37-41; State v. Preston (Feb. 9, 2001), Lucas App. No. L-00-1096. However, we also conclude that failure to object to the questioned testimony and statements, even if deemed inappropriate, did not result in prejudicial error. State v. Carpenter (1996), 116 Ohio App.3d 615, 621-622;State v. Griffin (Nov. 17, 2000), Lucas App. No. L-98-1215. Therefore, her first argument fails.
 {¶ 52} Baumgartner's second argument in her fourth assignment of error concerns her trial counsel's alleged failure to effectively cross-examine witnesses. We have stated before that "[d]ecisions as to what questions will be asked a witness are tactical and do not constitute grounds for ineffective assistance of counsel." State v. Ransey (Jan. 16, 1998), Lucas App. No. L-96-257. Furthermore, we have noted that trial counsel is given wide latitude concerning the cross-examination of witnesses.State v. Dixon (Nov. 17, 2000), Lucas App. No. L-96-004. After reviewing the record, we do not find how trial counsel's cross-examination of witnesses caused a substantial violation of his duty to his client and that Baumgartner was prejudiced by her attorney's actions or alleged breach of duty. Trial counsel's handling of cross-examination was clearly a legitimate trial tactic, and the record does not reflect that Baumgartner was prejudiced in any way. Therefore, her second argument fails. Baumgartner's fourth assignment of error is found not well-taken.
 {¶ 53} Also, at this time, we will address the numerous motions that Ms. Baumgartner has filed in this case that have not been previously decided by this court. With the exception of her December 19, 2003 motion that asked our court to decide her case, which we are doing presently, Baumgartner's motions have requested that we grant her a bond in this case and stay her sentence and probation terms under App.R. 8. To start, Baumgartner is currently not incarcerated; therefore, her applications for bond are moot. Additionally, the release of an accused on bail, generally, is a matter resolved within the sound discretion of the trial court. Christopher v. McFaul (1985),18 Ohio St.3d 233, 234. Further, "the danger of flight is inherently greater after conviction than before a guilty verdict." Id. As to her motions to stay her sentence or the conditions of her probation, they are also rendered moot because this decision ends the pendency of her appeal. Moreover, any objections Baumgartner had to her conditions of probation should have been argued on direct appeal. See generally, State v. Jones (1990),49 Ohio St.3d 51. Upon due consideration, Baumgartner's motions filed on the following dates are not well-taken and denied: September 5, 2003; October 13, 2003; October 27, 2003; December 19, 2003; February 13, 2004; and March 10, 2004. Her motions of August 12, 2003 and April 21, 2004 were filed in both this case and OT-03-013. Therefore, those motions will be resolved separately.
 {¶ 54} The judgment of the Ottawa County Municipal Court is affirmed. Appellant is ordered to pay the court costs of this appeal.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Glasser, J., Abood, J., Nahra, J., Concur.
Judges Glasser, Abood, and Nahra, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] R.C. 2921.13 states:
"(A) No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when any of the following applies:
(1) The statement is made in any official proceeding.
(2) The statement is made with purpose to incriminate another.
(3) The statement is made with purpose to mislead a public official in performing the public official's official function.
(4) The statement is made with purpose to secure the payment of unemployment compensation; Ohio works first; prevention, retention, and contingency benefits and services; disability assistance; retirement benefits; economic development assistance, as defined in section 9.66 of the Revised Code; or other benefits administered by a governmental agency or paid out of a public treasury.
(5) The statement is made with purpose to secure the issuance by a governmental agency of a license, permit, authorization, certificate, registration, release, or provider agreement.
(6) The statement is sworn or affirmed before a notary public or another person empowered to administer oaths.
(7) The statement is in writing on or in connection with a report or return that is required or authorized by law.
(8) The statement is in writing and is made with purpose to induce another to extend credit to or employ the offender, to confer any degree, diploma, certificate of attainment, award of excellence, or honor on the offender, or to extend to or bestow upon the offender any other valuable benefit or distinction, when the person to whom the statement is directed relies upon it to that person's detriment.
(9) The statement is made with purpose to commit or facilitate the commission of a theft offense.
(10) The statement is knowingly made to a probate court in connection with any action, proceeding, or other matter within its jurisdiction, either orally or in a written document, including, but not limited to, an application, petition, complaint, or other pleading, or an inventory, account, or report.
(11) The statement is made on an account, form, record, stamp, label, or other writing that is required by law.
(12) The statement is made in connection with the purchase of a firearm, as defined in section 2923.11 of the Revised Code, and in conjunction with the furnishing to the seller of the firearm of a fictitious or altered driver's or commercial driver's license or permit, a fictitious or altered identification card, or any other document that contains false information about the purchaser's identity.
(13) The statement is made in a document or instrument of writing that purports to be a judgment, lien, or claim of indebtedness and is filed or recorded with the secretary of state, a county recorder, or the clerk of a court of record.
(B) No person, in connection with the purchase of a firearm, as defined in section 2923.11 of the Revised Code, shall knowingly furnish to the seller of the firearm a fictitious or altered driver's or commercial driver's license or permit, a fictitious or altered identification card, or any other document that contains false information about the purchaser's identity.
(C) It is no defense to a charge under division (A)(4) of this section that the oath or affirmation was administered or taken in an irregular manner.
(D) If contradictory statements relating to the same fact are made by the offender within the period of the statute of limitations for falsification, it is not necessary for the prosecution to prove which statement was false but only that one or the other was false.
(E)(1) Whoever violates division (A)(1), (2), (3), (4), (5), (6), (7), (8), (10), (11), or (13) of this section is guilty of falsification, a misdemeanor of the first degree.
(2) Whoever violates division (A)(9) of this section is guilty of falsification in a theft offense. Except as otherwise provided in this division, falsification in a theft offense is a misdemeanor of the first degree. If the value of the property or services stolen is five hundred dollars or more and is less than five thousand dollars, falsification in a theft offense is a felony of the fifth degree. If the value of the property or services stolen is five thousand dollars or more and is less than one hundred thousand dollars, falsification in a theft offense is a felony of the fourth degree. If the value of the property or services stolen is one hundred thousand dollars or more, falsification in a theft offense is a felony of the third degree.
(3) Whoever violates division (A)(12) or (B) of this section is guilty of falsification to purchase a firearm, a felony of the fifth degree.
(F) A person who violates this section is liable in a civil action to any person harmed by the violation for injury, death, or loss to person or property incurred as a result of the commission of the offense and for reasonable attorney's fees, court costs, and other expenses incurred as a result of prosecuting the civil action commenced under this division. A civil action under this division is not the exclusive remedy of a person who incurs injury, death, or loss to person or property as a result of a violation of this section."